[No. 28856. Department Two. February 16, 1943.]

THE OLD NATIONAL BANK AND UNION TRUST COMPANY
OF SPOKANE, *as Trustee, Respondent,* v. RAYMOND
J. HUGHES *et al., Respondents,* and DOROTHY
M. HUGHES *et al., Appellants.*[1]

[1]Reported in 134 P. (2d) 63.

*Weaver & Weaver,* for appellants.

*Graves, Kizer & Graves,* for respondents Hughes *et al.*

*Witherspoon, Witherspoon & Kelley,* for respondent Old National Bank of Spokane.

BLAKE, J.—Plaintiff, as trustee under a declaration of trust executed by George W. Hughes on September 25, 1908, brought this action, praying that the court construe the trust agreement and "instruct . . . as to the manner and to whom [the] trust corpus should be distributed." Plaintiff is successor to W. J. C. Wakefield, who was designated trustee in the declaration of trust and acted as such until his death in 1931. The defendants in the case are nephews, nieces, and grandnieces of the settlor of the trust. The question for determination on this appeal is what, if any, rights the grandnieces have under the trust agreement. Except for a negligible interest in income, the trial court held they had none. From a decree directing that the trust estate be distributed to the nieces and nephews to the exclusion of the grandnieces, the latter appeal.

The declaration of trust recites that, on September 11, 1908, the settlor had conveyed his property to W. J. C. Wakefield "in trust for the purpose of more conveniently carrying out my wishes with reference to the handling and disposition of said property during my lifetime, as well as after my death." It is further recited that, while he had neither seen nor known

much "of my *five brothers* and *their families* . . '. nor of my mother," he still had "for them the most sincere brotherly and filial affection and feelings, and am endeavoring to provide for them liberally and impartially from my estate." (Italics ours.)

It was provided that the income from the trust estate be paid to the settlor during his lifetime. Upon his death, the income was to go one sixth to his mother and one sixth to each of his five brothers. Upon the death of his mother, her share was "to be paid over to my said brothers *surviving*, share and share alike"; and,

"Upon the death of any brother leaving issue of his body surviving, the share of said net income so paid to him shall be paid to his *children*. Upon the death of any brother leaving no issue surviving him, the shares or portion of said net income theretofore paid to him shall be paid to his surviving brothers, or the living issue of any deceased brother."

Then follows this provision:

"Upon the death of my mother and all of my said brothers said Trustee, his successor or successors, shall pay over, or cause to be paid over to the *surviving children of my said brothers,* per stirpes and not per capita, all of such trust property remaining at such time. It being my intention by this trust to leave, after the payment of my debts, expenses of administration and the payment of said two bequests or gifts hereinbefore mentioned, a life estate in all the remainder and residue of my estate, in trust, however, for my mother and five brothers and with the net income payable as hereinbefore provided, and *upon the death of my said mother and all of my said brothers, to leave said estate in fee to their respective surviving children, per stirpes and not per capita.*" (Italics ours.)

The mother died in 1914; the last of the five brothers in 1940.

█ In construing instruments creating trusts, the sole object of the courts is to ascertain the intent and purpose of the settlor, and to effectuate that purpose in so far as "it be consistent with rules of law." 26 R. C. L. 1252, §§ 99, 100. As pointed out in *Shufeldt v. Shufeldt*, 130 Wash. 253, 227 Pac. 6, many rules have been devised to aid in ascertaining the intent and purpose of the settlor. Primarily, such intent and purpose must be derived from the terms of the instrument—construing all the provisions together. *In re Peters' Estate*, 101 Wash. 572, 172 Pac. 870.

Taking the instrument by its four corners, the appellants argue that the use of the term "brothers and *their families*" in the recitals of the instrument and the use of the word "issue" in the clause relating to the distribution of a deceased brother's share of income, manifest a purpose by the settlor to include grandchildren as well as children of his brothers as objects of his bounty.

█ We think it unnecessary to discuss the position taken by appellants with respect to the term "brothers and their families." For, under the facts presented in this case, the word "families" could be accorded no greater import than the word "issue." It is, of course, conceded that the word "issue" standing alone would include descendents of the brothers to the remotest degree. Construing the instrument altogether, however, we do not think the word can be said to stand alone. "Issue" appears only in the income clause. In the first sentence of that clause it is followed immediately by the word "children." True, the word "issue" is not qualified by the word "children" in the second sentence of the income clause. But it is very clearly qualified by the use of the word "children" in the next clause relating to the distribution of the corpus

of the trust estate. The word "issue" does not appear in that clause at all.

While a somewhat plausible argument may be made that grandchildren of the deceased brothers should share in the income, it is clear they have no right to participate in the distribution of the corpus of the trust estate. For the general rule to which this court is committed (*In re Hutton's Estate*, 106 Wash. 578, 180 Pac. 882, 3 A. L. R. 1673) is that the word "child" or "children" used in a trust instrument will not be construed to include "grandchildren" unless such construction is impelled by other language in the instrument. *Billingsley v. Bradley*, 166 Md. 412, 171 Atl. 351, 104 A. L. R. 274, annotation II, p. 283.

It is, of course, the position of appellants that the use of the word "issue" in the income clause does impel that construction; in other words, that the word "issue" as used in the income clause expands the effect of the word "children" as used in the clause relating to the disposition of the corpus of the estate. We do not think the position tenable. On the contrary, we have most respectable authority for holding that the use of the word "children" in a trust instrument circumscribes the effect of the word "issue" appearing in another part of the instrument. *Adams v. Law*, 17 How. (58 U. S.) 416, 15 L. Ed. 149; *Palmer v. Horn*, 20 Hun. (N. Y.) 70, affirmed 84 N. Y. 516; *In re Potter's Estate*, 173 Misc. 191, 17 N. Y. S. (2d) 489; *King v. Savage*, 121 Mass. 303; *Taylor v. Taylor*, 63 Penn. 481, 3 Am. Rep. 565; *In re Hopkins' Trusts*, L. R., 9 Ch. Div. 131. In *Adams v. Law, supra,* the court said, p. 421:

"Hence, in the construction both of wills and deeds, where the instrument has not, so carefully as in the present case, limited the word 'issue' to children living, etc., but where the term is used without quali-

fication, and is in another part of the same instrument supplied by the word child, or children, as a synonym, the courts have uniformly restrained its signification to children. Thus, in *Carter v. Bentall*, 2 Beav. 557, where the devise was a moiety to 'issue' of his daughter, and, if only one child, then to such one child, and the trustee was ordered to lay out the dividends in the maintenance of such 'issue,' Lord Langdale, M. R., held that the word issue was thus explained by the testator to mean 'children.'

"In the case of *Loveday v. Hopkins*, Amb. 273, it was held that grandchildren were not entitled under a bequest to 'heirs'; because the term appeared, by the context of the will, to be used in the sense of children.

"In *Swift v. Swift*, 8 Sim. 168, by marriage articles the jointure property was limited, after the death of the survivor, on the 'issue' of the marriage living at the death, in equal share if more than one, and if but one, to go to such 'child.' The only child of the marriage died before the contingency, leaving a child. It was held that 'issue' was to be construed 'child,' and the legacy did not vest in the grandchild."

We are fortified, in the application of this rule in the instant case, by Wakefield's practical interpretation of the income clause and the following recitals contained in the declaration of trust: .

"I have personally known Mr. Wakefield for the past fifteen (15) years, he having been my attorney and legal adviser during said time, and I repose in him implicit confidence, and it is at my earnest solicitation and request that he has consented to act as Trustee in these matters, . . .

"I have requested that the above insertion be made herein in order that hereafter there may be no question in the mind of any Court or any person or any beneficiary under this instrument, . . .

" . . . *it is my desire that his decision as to the terms of this trust and the interpretation of any clauses or parts thereof shall be final, binding and irrevocable upon me, my estate and all beneficiaries hereunder, and not subject to revision or change by any Court.*

He knows my intention, desires and wishes in the premises better than anyone else, and I wish to avoid any interference or litigation in connection with this matter." (Italics ours.)

After the death of the settlor in 1910, the trustee paid the income to the mother and five brothers. The mother died in 1914. Thereafter, the income was paid to the five brothers until the death of one, without issue, in 1922. Until 1924, the income was divided between the four surviving brothers. In that year (1924), another brother died leaving four children. Until 1929, the income was paid to these four children (*per stirpes*) and the three surviving brothers. In the latter year, two brothers died—one leaving a son and two grandchildren, the other five children and three granddaughters, the children of a deceased son.

From then until his death in 1931, Mr. Wakefield paid the income to the children of deceased brothers (*per stirpes*) and to the surviving brother—to the exclusion of all grandchildren. We think this course of conduct manifests very conclusively that Wakefield's interpretation of the clauses of the declaration relating to the disposition of the trust income and corpus, was in accord with, if not in reliance upon, the rule laid down in the authorities we have cited. The rule is well settled that, under such powers as the settlor conferred upon Mr. Wakefield, the trustee's construction and interpretation of the instrument will be accepted by the courts in the absence of fraud or arbitrary conduct. 69 C. J. 124, § 1166. *Talladega College v. Callanan,* 197 Iowa 556, 197 N. W. 635; *Grant v. Stephens,* 200 S. W. (Tex. Civ. App.) 893; *Moore v. Harper,* 27 W. Va. 362; *Greene v. Huntington,* 73 Conn. 106, 46 Atl. 883; *Couts v. Holland,* 48 Tex. Civ. App. 476, 107 S. W. 913.

Appellants point to other conduct of Mr. Wakefield as manifesting a different interpretation on his part of the provisions of the declaration under discussion. We think it is unnecessary to discuss the conduct pointed out, for, as we view it, it was not inconsistent with the interpretation he placed upon the provisions by the method adopted in the distribution of income from 1929 until his death in 1931.

Taking the declaration of trust by its four corners, we are satisfied that George W. Hughes had in mind as objects of his bounty his mother, his five brothers, and only such of the brothers' *children* as might survive at the death of the last brother.

Appellants ask, in case of affirmance of the decree, that their costs on appeal be charged against the trust estate. This request is based upon § 10, p. 307, of the declaratory judgments act (Laws of 1935, chapter 113), which provides: "In any proceeding under this act, the court may make such award of costs as may seem equitable and just." We do not feel justified in charging appellants' costs against the trust estate. We think it would be "equitable and just," however, to relieve appellants of the burden of respondents' costs on appeal.

Decree affirmed.

SIMPSON, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.