[No. 35981.   Department Two.   October 19, 1961.]

*In the Matter of the Estate of* CHARLES BLISS PRESTON, *Deceased.*

THE NATIONAL BANK OF COMMERCE OF SEATTLE, *as Successor Trustee, Respondent,* v. PEARL PRESTON, *Respondent,* CLARENCE C. STOUT, *as Executor, Appellant.*\*

\*Reported in 365 P. (2d) 595.

*Ringhoffer & Ringhoffer* (*Glenn R. Jack,* of counsel), for appellant.

*Cahill & Woolson,* for respondent Pearl Preston.

*Dyar & Hubbard, amicus curiae.*

HUNTER, J.—This appeal is from an order of the Superior Court for Walla Walla County directing, as between opposing claims, the distribution of income from a trust estate, and allowing an attorney's fee.

Charles Preston, a resident of Oregon, died in 1948 and left in his estate farm lands in Walla Walla County. By

his will, he devised these lands to the Bank of Waitsburg in trust. The portion of the will which relates to this controversy is as follows:

"To manage, control and lease all of the real estate of which I may die seized; to bargain, sell and convey any and all of said real estate in such parcels or lots, and for such prices and upon such terms as said Trustee shall in the exercise of its judgment deem adequate and sufficient, and to execute and deliver to the purchaser or purchasers thereof good and sufficient deeds therefor; to pay all taxes and assessments and costs of maintenance of said real property and the buildings situate thereon; to collect, receive and receipt for all rents, issues and profits thereof; to collect, receive and receipt for all income from any and all stocks and securities of which I may die possessed; to sell and dispose of said stocks or securities as my said Trustee shall deem unprofitable; to invest and reinvest all the moneys derived from the sales of said real or personal property in interest-bearing securities. Said Trustee is requested to keep intact as nearly as possible the corpus of said trust estate. *Said Trustee shall pay from the income derived by it from said trust estate all taxes, assessments, costs of maintenance, repairs and the costs and expenses of the performance of this trust; and after making payment of said costs, charges and expenses said Trustee shall pay to my brother* HERBERT PLATT PRESTON *and* PEARL PRESTON, *his wife, during their lives, and upon the death of either of them, then unto the survivor, the sum of Three Hundred Dollars ($300.00) per month; and said Trustee shall pay unto my wife* MYRTLE M. PRESTON *the entire balance of said income as and when the same is received, for and during the period of her natural life.* In the event of the death of my said brother HERBERT PLATT PRESTON and his wife, PEARL PRESTON prior to the death of my wife MYRTLE M. PRESTON, then said Trustee shall turn over the entire balance of said income unto my said wife MYRTLE M. PRESTON and she shall receive the entire income from said trust estate after the payment of the aforesaid taxes, assessments, costs, charges and expenses for and during her life; and in the event of the death of my wife MYRTLE M. PRESTON prior to the death of my brother HERBERT PLATT PRESTON, and prior to the death of his wife, PEARL PRESTON, then the entire income of said trust estate, less the aforesaid costs, charges and expenses, shall be paid by my said Trustee to my brother HERBERT PLATT PRESTON and his wife PEARL PRESTON, or

unto the one of them who then survives, for and during the period of the natural life of my said brother and his said wife, and the survivor of them." (Italics ours.)

A charitable institution was named final income beneficiary after the death of the three persons named.

In 1951, when the final decree of distribution was entered in the probate of Charles Preston's estate, the farm lands were the only assets distributed to the trust estate. In order to carry the trust until the next harvest and to pay Herbert and Pearl Preston their monthly income, Myrtle Preston advanced $3,700 to the trustee. Thereafter, while Myrtle Preston was alive, the trustee withheld certain sums from the income of each harvest to carry the trust until the following harvest.

Herbert Preston died in 1955. Myrtle Preston died July 27, 1959. At the time of her death, the farm lands were under leases by which the trustee, as lessor, was to receive two-fifths of the crops as rental; approximately twenty-five per cent of the 1959 crops had been harvested and none of the crops had been sold. The proceeds of subsequent sales of the lessor's share are now held by the trustee.

In 1955, the Bank of Waitsburg petitioned to have the National Bank of Commerce of Seattle substituted as trustee and also requested an allowance of a reasonable fee to the firm of Dyar and Hubbard for services rendered in relation to the trust. The trial court, at that time, allowed a fee of $2,325; the firm has not yet received payment.

The proceeding giving rise to this appeal was initiated by Pearl Preston (hereinafter referred to as respondent), who petitioned to receive the net income for the year 1959. She contended that as the 1959 crops were not sold until after Myrtle Preston's death, the proceeds of subsequent sales received by the trustee are distributable to the succeeding beneficiary of the income. The respondent also requested that the attorney's fee fixed by the 1955 order be paid from money due the Myrtle Preston estate, if any was due.

The executor of Myrtle Preston's estate (hereinafter referred to as the appellant) answered that (1) according

to the will he is entitled to the net income for 1959, (2) Myrtle Preston's estate should be reimbursed for advancements made for the 1959 and 1960 crops, and (3) the trustee, personally, should bear the expense of the attorney's fee.

The trial court ordered the trustee to pay the respondent the entire income of 1959 less expenses and to pay the attorney's fee as previously ordered. The court, however, failed to mention in its order anything about funds held over from the 1958 net income.

The appellant assigns error to the trial court's conclusions and contends that he is entitled to the net income of 1959, and should be reimbursed in the amount of the net income earned in 1958 which was withheld by the trustee for paying expenses of operating the trust until the next year.

The appellant first contends that Myrtle Preston had an equitable life estate in the corpus of the trust. It is then argued that as her tenancy terminated while there were crops on the farm lands, her personal representative is entitled, under the law of emblements, to the proceeds of the sale of those crops.

In considering this contention we are satisfied that the law of emblements is not applicable, even if it be assumed, *arguendo*, that Myrtle Preston held an equitable life estate in the trust corpus. The law of emblements evolved in order to promote the development of agricultural husbandry and applies to situations where tenancies of uncertain duration have terminated while the crops which have been produced by the labor of the previous tenant in possession remain on the land. The law allows him to return and reap the fruits of his toil. 15 Am. Jur. Crops § 24 (1938). That rule, however, does not control the question of the distribution of trust income. The primary determinant as to that question is the settlor's intent. *Old Nat. Bank & Union Trust Co. v. Hughes*, 16 Wn. (2d) 584, 134 P. (2d) 63 (1943), *Safe Deposit & Trust Co. of Baltimore v. Woodbridge*, 184 Md. 560, 42 A. (2d) 231, 159 A. L. R. 580 (1945).

■ The purpose of the trust in this case was to provide support for members of Charles Preston's family. The trustee was given exclusive power of management and complete control of the corpus. Myrtle Preston as beneficiary had only the right to receive the income less deductions as provided in the will. These facts show an intent inconsistent with an application of the law of emblements. We hold that the correct rule is that stated in the American Law Institute's Restatement of the Law of Trusts, Second, § 233:

"(1) Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary,

"(a) the former beneficiary is entitled to, *and only to, the net income during such period,* and

"(b) *the latter beneficiary is entitled to the principal on the expiration of such period.*

"(2) The net income is ascertained by subtracting expenditures allocable to income from receipts allocable to income." (Italics ours.)

Comment o. to § 233 acknowledges that the rule "*is applicable where there are two or more beneficiaries entitled successively to income during designated periods.*" (Italics ours.)

■ The appellant contends, however, that the crops in existence at Myrtle Preston's death were "income" within the meaning of that term as used in Charles Preston's will. In defining that word, the sole concern of the court is to ascertain the intent of the settlor and to effectuate his purposes in so far as they are consistent with rules of law. The intent and purpose must be derived by construing together all provisions of the instrument. *Old Nat. Bank & Union Trust Co. v. Hughes, supra.*

■ The trustee was directed to pay to Myrtle Preston, after the payment of all costs, charges and expenses, and $300 per month to Herbert and Pearl Preston, or the survivor, the "entire balance of said income *as and when the same is received.*" (Italics ours.) This language excludes

from "income" unharvested crops which have not been received by the trustee. However, the record shows that approximately twenty-five per cent of the crops had been harvested, two-fifths of which belonged to the lessor trustee. The lease agreements, exhibits Nos. 3 and 4, provide that the lessee "will pay as rental annually two-fifths (2/5) of all the grain raised and produced on said premises, combined, bulked and delivered at the warehouse. . . ." The portion of the crop harvested before Myrtle Preston's death, therefore, constituted income to the estate within the meaning of the trust.

It is the respondent's contention, however, that Myrtle Preston's rights in the balance of the income did not accrue until after the payment therefrom of all costs and charges provided in the will. The respondent relies primarily on the case of *Kirwin v. Hall*, 169 Wash. 501, 14 P. (2d) 62 (1932), in support of this contention. The case is not in point. In that case we distinguished the facts therein from a factual situation as we have here, when we stated:

". . . A different question would have been presented had Mr. Hough bequeathed to his wife for her life the net income from his estate, or had he directed that his executors pay such income to her up to the date of her death."

In the instant case the language in the trust is precise; ". . . said Trustee shall pay unto my wife MYRTLE M. PRESTON *the entire balance of said income as and when the same is received, for and during the period of her natural life.*" (Italics ours.) It is implicit from this language that the "balance" is in the hands of the trustee, unsegregated from the charges against the gross income, when the gross income is received. The determination of the amount of that "balance" is a matter of computation. The right to the "balance" in the gross income vests in Myrtle Preston as and when the income of the estate is received by the trustee. Therefore, Myrtle Preston at the time of her death was entitled to the income reflected in crops harvested subject to the prorated charges against this income for the cost of production and other expenses stated in the trust instrument. The court, therefore, erred in

failing to direct distribution of this income to her personal representative.

The appellant contends the court erred in failing to direct that the trustee reimburse the estate of Myrtle Preston for moneys expended from income of prior years for the production of future crops. The respondent, in support of the court's ruling, places strong reliance upon the case of *Shirk v. Walker*, 298 Mass. 251, 10 N. E. (2d) 192, 125 A. L. R. 620 (1937), for the proposition that the trustee had a right to withhold a reasonable amount from income in order to meet anticipated future expenses, and that such income withheld is to be deducted as an expense from gross income during the accounting period in which it was received.

The cited case does not support the respondent's contention. The issue there was whether a trustee could withhold a reasonable portion of net income to meet anticipated expenses against the claims of beneficiaries presently entitled to the net income. We are here concerned with the relative rights of successive life beneficiaries. In the case of *Chapin v. Collard*, 29 Wn. (2d) 788, 189 P. (2d) 642 (1948), we quoted with approval the rule stated in *Laflin v. Commissioner of Internal Revenue*, 69 F. (2d) 460 (1934):

" 'It is a rule of general application that the beneficiary of a trust entitled thereunder to receive the income from such property may not be required to suffer a deduction from such income for the creation of a sinking fund to provide for depreciation and obsolescence, unless, indeed, the trust instrument or the law of the state makes provision therefore.' "

The reasoning behind that rule applies with equal force here. Although the trustee may have had the right, under court supervision and for the benefit of Myrtle Preston, to withhold a proper amount from the 1958 distributable net income to carry the trust until the 1959 harvest, we hold that upon the termination of Myrtle Preston's beneficial interest, her estate is entitled to a proration and reimbursement of her moneys expended to operate the trust to

produce income in which it cannot participate. *Taylor v. Bentinck-Smith,* 304 Mass. 430, 24 N. E. (2d) 146, 126 A. L. R. 857 (1939) and Restatement of the Law of Trusts, Second, § 237 and comment c. to that section.

█ The attorney's fee fixed in 1955 by court order, prior to Myrtle Preston's death, was a proper charge against income as an operating expense of the trust. The trial court was correct in its conclusion that as the 1955 order was appealable and the time for appeal therefrom has long since expired, it cannot be collaterally attacked in a subsequent proceeding. *Weaver v. Stinson,* 177 Wash. 140, 31 P. (2d) 510 (1934).

The trial court's order in respect to the attorney's fee is affirmed, and the order is otherwise reversed. The case is remanded with directions to proceed in accordance with the views expressed in this opinion on the matter of distribution of income and apportionment of expenses. The appellant, having substantially prevailed, will be allowed his costs on this appeal.

FINLEY, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.