[No. 28-40200-1.   Division One.   January 12, 1970.]
Panel 1

OLD NATIONAL BANK OF WASHINGTON *et al., Respondents,* v. KIM CAMPBELL *et al., Appellants.*

*Keith, Winston & Repsold* and *Robert P. Beschel,* for appellants.

*Witherspoon, Kelley, Davenport & Toole* and *E. Glenn Harmon,* for respondents.

FARRIS, J.—This is an action for a declaratory judgment defining rights and duties of the trustee and beneficiaries of an inter vivos trust executed by Thomas L. Greenough and his wife, Tennie E. Greenough on May 10, 1910, and the effect, if any, of certain subsequent agreements entered into by some of the beneficiaries of the trust.

The plaintiffs are Old National Bank of Washington, Spokane, as trustee and certain lineal descendants of the trustors. The defendants consist of the remaining living lineal descendants of the trustors; the appellants (five of the defendants) are great and great-great grandchildren of the trustors. It was the judgment of the trial court that the trust was to benefit only the surviving grandchildren to the exclusion of any descendants beyond the grandchildren. The judgment further declared that certain agreements entered into by and between certain of the grandchildren of the trustors were legally enforceable.

The trust instrument created in fact six separate income trusts (one for each of the trustors' children) and a single corpus provision controlling the distribution of the trust assets upon the death of the last of the children of the trustors. During the life of the trustors' children, the income was to be paid to each living child

> during his natural life, and upon his death you will pay same to his issue surviving, share and share alike, and so continue until the final termination of your trust hereunder as hereinafter provided. If he shall die without issue surviving him, then any dividends declared on said certificate of stock shall be paid by you to his brothers and sisters herein mentioned, or the issue of any such deceased brother or sister, share and share alike, per stirpes and not per capita.

Then follows the corpus provision:

> Seven. You will continue to hold said certificates of stock mentioned aforesaid, as such trustee under the conditions mentioned in the preceding six paragraphs hereof, until the death of all of my said children mentioned aforesaid, and upon the death of the last survivor of them you will cause said six certificates of stock to be cancelled and cause to be issued in lieu of each such

certificate a new certificate or certificates for the number of shares and fractional parts of a share that such original number of shares of each such certificate bears to the number of surviving children of each deceased child of mine, such new certificates to be issued in the name of and delivered to each such grandchild, and the title thereto shall thereupon immediately vest in each such grandchild respectively, and the trusts herein created shall immediately terminate, it being my intention that the distribution of said stock upon the termination of said trusts shall be per stirpes and not per capita. (For example, if upon the termination of the trusts herein created my daughter, Estella G. Easton, leaves two children surviving, then each such grandchild shall receive two hundred forty-nine and 1/2 (249.5) shares of said stock. If my son, Thomas Leo Greenough, upon the termination of the trusts herein created, leaves five children surviving, then each such grandchild shall receive ninety-nine and 4/5 (99.8) shares of said stock.) In the event a child leaves no issue surviving at the termination of the trusts herein created, then the four hundred and ninety-nine (499) shares of stock to which his or her issue would have been entitled shall be distributed among his or her brothers' and sisters' children, per stirpes and not per capita.

In 1955, John E. Greenough, one of the then surviving children of the original trustors, asked the law firm of Witherspoon, Witherspoon and Kelley (successor to the law firm of Wakefield & Witherspoon, drafters of the trust) for an opinion as to how the income and corpus of the trust would be divided on his death in the event that his son or daughter (grandchildren of the trustors) should predecease him leaving issue (great-grandchildren of the trustors). Allan H. Toole, a member of the firm, wrote to Mr. John E. Greenough opining that the income of the trust would go to the children's children (great-grandchildren of the trustors) but that the corpus or "trust assets" were to be distributed only to the then surviving grandchildren of the trustors on the death of their last child.

In response to Toole's opinion and in order to protect the interests of their children, five of the grandchildren of the

trustors, in April 1956, signed an agreement. In essence, the agreement provided that the surviving grandchildren who were parties to the agreement would voluntarily divide or reallocate their shares with the children and descendants of those parties to the agreement who might die before termination of the trust. The sixth grandchild, Leone Greenough Campbell (later LaPrade), declined to enter into any agreement stating that she wished to have her "Grandfathers will left as he wrote it and as he wanted it."

On March 24, 1964, Leone Greenough Campbell LaPrade died. On April 30, 1964, Allan H. Toole, after a request for further advice from the trustee, wrote a letter to the bank giving a further opinion with respect to the trust. This letter said in part:

Gentlemen:

As a result of the death of Leone La Prade we have reexamined the foregoing trust and the related instruments.

Contrary to our previous thoughts on the matter, it is our opinion that considerable doubt exists as to your authority to make any distributions of income to great grandchildren of the settlor. This would include the children of Leone La Prade and of Mrs. Bradley. See *Old National Bank vs. Hughes,* 16 Wn. (2d) 584.

In reliance on this letter, the trustee withheld payment of the income from the trust to the great grandchildren whose parents had predeceased them. In June, 1964, the then surviving four grandchildren entered into a further agreement to clarify the intentions of the grandchildren who entered into the April 1956 agreement. The new agreement ratified the acts of the trustee in paying the income to the great-grandchildren of deceased grandchildren who entered into the April, 1956 agreement. It did not provide for allocation of any income payment to the great-grandchildren who were children of Leone Greenough Campbell LaPrade. As a result, the children and grandchildren of Leone Greenough Campbell LaPrade are receiving nothing from the trust. They are the appellants in this matter.

■ The duty of the court is to ascertain the intent and purpose insofar as it is consistent with rules of law. *Seattle First Nat'l Bank v. Crosby,* 42 Wn.2d 234, 254 P.2d 732 (1953). Primarily, the intent and purpose of the settlor must be derived from the terms of the instrument—construing all the provisions together. *Old Nat'l Bank & Union Trust Co. v. Hughes,* 16 Wn.2d 584, 134 P.2d 63 (1943).

Reading the trust instrument as a whole, the appellants argue that the word "issue" must be taken at its normal and accepted usage as including "descendants to the remotest degree" and that the words "children" and "grandchildren" must be deemed to include "great grandchildren."

Appellants find it very significant that six separate trusts were originally created. They argued that this fact makes the "per stirpes and not per capita" language of both the income and corpus provisions mere surplusage *unless* "children" is read to include lineal descendants. At least one court has so construed "children" where the "per stirpes" language has been used. *In re Estate of Clark,* 359 Pa. 411, 59 A.2d 109 (1948).

■ We agree that the term "issue" standing alone would include descendants to the remotest degree. *Old Nat'l Bank & Union Trust Co. v. Hughes, supra.* In the instrument before this court, the word "issue" does not stand alone. It is qualified by the other words used.

Appellants' theory that the word "children" should be deemed to include all lineal descendants would be more persuasive if the word "grandchildren" were not also used in the document. If one intended that the term "children" should include his lineal descendants to the remotest degree it would be totally unnecessary to use the word "grandchildren" in the same paragraph. A more reasonable conclusion is that "children" and "grandchildren" were used to limit the term "issue."

The trust instrument explained the intent of the trustor with the following language:

For example, if upon the termination of the trusts herein created my daughter, Estella G. Easton, leaves two chil-

dren surviving, then each such grandchild shall receive two hundred. forty-nine and 1/2 (249.5) shares of said stock. If my son, Thomas Leo Greenough, upon the termination of the trusts herein created, leaves five children surviving, then each such grandchild shall receive ninety-nine and 4/5 (99.8)  .  .  .

We believe that this language explains what the trustor meant when he said "per stirpes." It indicates how he intended to use the words "children" and "grandchildren." Under similar facts the Supreme Court stated:

> we have most respectable authority for holding that the use of the word "children" in a trust instrument circumscribes the effect of the word "issue" appearing in another part of the instrument. [Citing cases.]

*Old Nat'l Bank & Union Trust Co. v. Hughes*, 16 Wn.2d 584, 588, 134 P.2d 63 (1943).

We believe that the *Hughes* decision and the decisions cited therein are controlling here. We find nothing in the instrument or in the record that is inconsistent with this conclusion.

It seems probable that the trustor never anticipated that two of his grandchildren would predecease two of his children, leaving issue. Nevertheless, this court cannot redraft an instrument to include provisions that the trustor would have included had he anticipated them. Our task is to clarify the provisions that he made.

We find that the use of the words "children" and "grand children" circumscribe the effect of the word "issue." Construing the instrument as a whole, any ambiguity caused by the use of the word "issue" in the income provision is fully resolved by construing "issue" as meaning "children" as used in the corpus provision. With regard to the "income provision," the reasoning of the trial court is as follows:

> The words "issue surviving" standing alone would of course encompass descendants. However, the words "issue surviving" are immediately followed by "share and share alike", which, if applied to children instead of to issue, seems entirely reasonable. On the other hand, if the word "issue" is to be given the meaning of descend-

ants, this would result in the share of the child surviving, that is, in this case, a grandchild of the trustors, being reduced by one share every time a child was born to him or her or to his or her brother or sister. In view of the fact that the trustors had plainly indicated in Paragraph 7 their desire that only grandchildren who survive shall take the corpus of the trust, it would seem to be a wholly unreasonable construction to hold that the contrary should apply as to income so that every great-grandchild or great-great-grandchild would participate in income.

Review of the record and the instrument has led us to the same conclusion.

■ The agreements entered into by certain of the grandchildren did not modify the trust itself. They merely provided for a reallocation of that portion of the benefits due to the parties to the agreement. A beneficiary is free to assign his interest in a trust in the absence of restrictions. For this reason, the agreements are valid and binding as between the parties thereto.

The judgment of the trial court is affirmed.

JAMES, C. J., and SWANSON, J., concur.

---

Petition for rehearing denied March 16, 1970.