[No. 19831-9-I. Division One. December 12, 1988.]

SHERWOOD B. KORSSJOEN, INC., *Respondent*, v. NEIL HEIMAN, ET AL, *Appellants*.

*Ronald J. Trompeter* and *Beresford, Booth, Baronsky & Trompeter,* for appellants.

*J. Mark Weiss, Yvette F. Benguerel, W.J. Thomas Ferguson,* and *Ferguson & Burdell,* for respondent.

WILLIAMS, J.*—Neil Heiman appeals from a judgment awarding payment of a real estate commission to Sherwood B. Korssjoen, Inc., d/b/a The Sherwood Group (Sherwood), a commercial real estate brokerage firm. The judgment was entered on the findings of a jury by special verdict. Heiman appeals on the bases that Sherwood failed to establish at trial that it was a licensed broker at the relevant times, the

---

*Justice William H. Williams is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

listing agreement was not in writing, Sherwood breached fiduciary duties owed to Heiman, and the jury was unable to answer two special interrogatories. Heiman also appeals the damages.

This is an action by a commercial real estate firm against a client for a commission claimed to be owning on a lease transaction. Neil Heiman retained Sherwood to negotiate a listing agreement whereby Sherwood would find a subtenant to sublease a portion of the building leased by Heiman for his record store, Peaches.

The Peaches store was originally owned by the Nehi Corporation. In 1979 Rainier Northwest University Associates purchased the leased property subject to Nehi's lease. Mr. Leonard Tall was a principal partner of Rainier. In 1981 the Nehi Corporation filed for bankruptcy in Los Angeles, California. Heiman submitted a purchase offer to the Bankruptcy Court to acquire all of the assets of the Seattle Peaches store. Tall opposed court approval of the assignment of the lease to Heiman. Tall and Heiman remained in litigation until March 1983.

In early 1981 Heiman met Daniel Pebbles and Jim Vehonsky, a salesman and broker, respectively, for Sherwood, to negotiate a listing agreement whereby Sherwood would find a subtenant to sublease a portion of the Peaches store. As a result of the meeting Heiman entered into an exclusive agency agreement with Sherwood. Heiman desired to sublet a portion of the store in order to reduce his substantial rent payments on the property and make the store more profitable.

In May 1982 Sherwood succeeded in interesting The Gap, a national retail organization, in the space. A representative of The Gap, Steve Kaplan, came to Seattle that month to inspect the premises. The Gap's concerns over the protracted litigation between Heiman and Tall over the assignment of Nehi's lease interest, and the improvements that The Gap desired for the property required that Sherwood contact Tall. Kaplan also suggested that The Gap would be unwilling to pay the rent Heiman was seeking.

Pebbles contacted Tall soon after the meeting with Kaplan. There is conflicting evidence as to whether Pebbles had Heiman's permission to do so.

Sherwood was able to interest two other stores in the property. Heiman's inability to deliver clear title discouraged one of the stores, and Heiman rejected the offer from the other.

The original exclusive listing agreement expired in July 1982 but Heiman extended it for two additional terms. In September 1982 Heiman terminated the agreement, believing that Sherwood initiated unauthorized and inappropriate contacts with Tall. Sherwood claims that Heiman later retained Sherwood on a nonexclusive basis under which Sherwood would earn its commission if a deal were made with The Gap or certain other prospects.

Sherwood continued to negotiate with Tall and The Gap to consummate a deal. In March 1983 Pebbles, Vehonsky and Tall came to Heiman with a new proposal that would satisfy Tall and The Gap. The proposal was that Heiman sign a new lease for a reduced space and that the remainder of the space be leased directly from Tall to The Gap. Heiman would give up parking spaces, most street frontage, and half the renewal terms of the prior lease agreement. The inflation caps on rent increases would be raised. Also, the proposal would end the litigation between Tall and Heiman. Heiman accepted the proposal and signed the new lease.

Heiman was unhappy with certain aspects of the new lease. Eventually he refused to pay a commission to Sherwood, who attempted to collect from Tall and The Gap. Sherwood brought this action against Heiman to recover its commission.

The case was tried to a jury with the issue of damages reserved for the judge. The jury by special interrogatories found that an implied or express contract existed between Heiman and Sherwood and that Sherwood was the procuring cause of the new lease. The jury was unable, however, to determine if Sherwood had violated any fiduciary duty

owing to Heiman. The judge subsequently assumed that the jury found a breach, but held that any breach was de minimis. The court awarded $30,000 in damages although Sherwood had prayed for only $28,314.35.

Heiman contends that Sherwood forfeited its commission by violating unspecified fiduciary duties and that the trial court does not have discretion to award a commission when the agent has violated a fiduciary duty. Heiman also argues that he is entitled to a new trial since the jury was unable to answer two special interrogatories.

Sherwood responds that Heiman did not provide substantial evidence that it breached any fiduciary duties and, alternatively, if there were a breach, it was de minimis. Sherwood also argues it was within the court's discretion to award the commission even if a breach occurred and that Heiman cannot complain about the unanswered special interrogatories because the court answered them in Heiman's favor.

When a special verdict is sought from a jury, the appropriate procedure is for the court to accept the findings of fact explicitly made or implicit in the jury's answers and, based thereon and on such additional findings as the court may find necessary to make, direct entry of judgment. As an initial matter, with respect to terminology, CR 49(a) speaks of "a special verdict in the form of a special written finding upon each issue of fact." Thus, the compilation of findings is "a special verdict." The rule contemplates that only factual questions will be submitted to the jury to which the judge will then apply the law supplementing, if necessary, any factual determinations not submitted to the jury. 5A J. Moore, *Federal Practice* ¶ 49.02, at 49–8 (2d ed. 1988).

The trial court in the present case submitted to the jury four special verdicts. The questions and the jury's responses were as follows: (1) "Did the parties have a contract, express or implied, after September 6, 1982?" [answer:] "Yes"; (2) "Was the plaintiff (Sherwood Group) the procuring cause of the new lease (GAP–Tall)?"

[answer:] "Yes"; (3) "Did plaintiff violate any of its fiduciary duties to defendants?" [answer:] "No answer"; and (4) "Which fiduciary duty(ies) did plaintiff violate?" [answer: blank]. The trial court answered question 3 affirmatively, but found the breach to be de minimis. The court thus exercised its discretion in ordering Heiman to pay a commission to Sherwood. Question 4 was never answered.

No Washington cases address the consequences of a jury's failure to answer special interrogatories. However, in *Blue Chelan, Inc. v. Department of Labor & Indus.*, 101 Wn.2d 512, 681 P.2d 233 (1984), the court considered the effect of a jury's irreconcilably inconsistent answers to special interrogatories, reversed the judgment on the findings and remanded the case, reasoning:

> Neither a trial court nor an appellate court may substitute its judgment for that which is within the province of the jury. In light of the irreconcilable inconsistency in the jury's findings, it is impossible to determine whether the jury meant to affirm or reverse the Board's ruling.

101 Wn.2d at 515.

■ Only a few other jurisdictions have contended with the instant situation. The modern rule is that where the unanswered special interrogatories concern determinative issues, the absence of jury findings is prejudicial and requires a new trial, at least on the unresolved issues;[1] but where the unanswered issues are not material, or where answers can be derived from the jury's responses to other interrogatories, the court may enter a judgment on the verdict.[2]

---

[1]For cases where the unanswered interrogatories were material and the appellate court ordered a new trial, see *Fenner v. Brockmoller*, 404 S.W.2d 369 (Tex. Civ. App. 1966); *Mobberly v. Sears, Roebuck & Co.*, 4 Ohio App. 2d 126, 211 N.E.2d 839 (1965).

[2]For cases where the court did not order a retrial because the unanswered interrogatories were not determinative, or the answers could be derived from the jury's findings, see *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453 (Fed. Cir. 1984), *cert. denied*, 471 U.S. 1136, 86 L. Ed. 2d 694, 105 S. Ct. 2676 (1985); *Black v. Riker–Maxson Corp.*, 401 F. Supp. 693 (S.D.N.Y. 1975);

The unanswered interrogatories in the present case are not determinative. Special interrogatories 3 and 4, which ask if Sherwood violated any of its duties to Heiman and which, if any, fiduciary duty(ies) Sherwood breached, are not material because the court may, in its discretion, award the commission regardless of whether there was a breach of a fiduciary duty.

Although an agent loses his or her right to compensation by violating a fiduciary duty to the principal, the denial of compensation rests with the discretion of the court. *Cogan v. Kidder, Mathews & Segner, Inc.,* 97 Wn.2d 658, 667, 648 P.2d 875 (1982); *Williams v. Queen Fisheries, Inc.,* 2 Wn. App. 691, 469 P.2d 583 (1970). "This dual agency relationship, while extremely delicate, is permissible when both parties have full knowledge of the facts and consent thereto." *Koller v. Belote,* 12 Wn. App. 194, 195, 528 P.2d 1000 (1974) (quoting *Brandt v. Koepnick,* 2 Wn. App. 671, 674, 469 P.2d 189 (1970)). Failing to disclose a dual agency can warrant forfeiture of an agent's commission; that decision is left to the discretion of the trial court. *Cogan,* at 667.

A dual agency exists when an agent violates his fiduciary duty to his principal by also representing the opposing party in a sales, lease or property exchange transaction. *See Cogan,* at 667 (sales); *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.,* 82 Wn.2d 714, 513 P.2d 282 (1973) (lease); *Koller v. Belote, supra* (property exchange); *Meerdink v. Krieger,* 15 Wn. App. 540, 550 P.2d 42 (1976) (sellers believed the agent worked for them when, in fact, the agent worked for another party); *Mersky v. Multiple Listing Bur. of Olympia, Inc.,* 73 Wn.2d 225, 437 P.2d 897 (1968) (agent's failure to disclose to the seller a close familial relationship between the agent and a prospective purchaser amounted to fraud in law); *Ross v. Perelli,* 13 Wn. App. 944, 538 P.2d 834 (1975) (broker's failure to make a

*Riley v. Davison Constr. Co.,* 381 Mass. 432, 409 N.E.2d 1279, 16 A.L.R.4th 687 (1980); *McVicker v. Johnson Cy.,* 616 S.W.2d 430 (Tex. Civ. App. 1981).

clear, express, and timely disclosure to seller of familial relationship between subagent and buyer constituted fraud as a matter of public policy); *Ramsey v. Sedlar,* 75 Wn.2d 901, 454 P.2d 416 (1969) (agent promoted a significant interest of the prospective purchaser).

There is some evidence that Sherwood failed to disclose a dual agency to Heiman. Pebbles, an agent of Sherwood, testified that he asked both Tall and Kaplan of The Gap to pay the commission before requesting the commission from Heiman. He also testified that he had been assisting The Gap in looking for alternate rental property.

In the present case the trial court answered in the affirmative the interrogatory of whether Sherwood violated a fiduciary duty. Although neither the court nor the jury identified which duty was breached, the court found the violation to be de minimis and, properly exercising its discretion, awarded a commission to Sherwood. We find no error in the court's actions.

Heiman next contends that the court erred in awarding a commission to Sherwood because Sherwood failed to allege and prove at trial that it was a licensed broker. Sherwood responds that it did present a prima facie case and that Heiman never denied that Sherwood was licensed.

RCW 18.85.100 provides in part:

> No suit or action shall be brought for the collection of compensation as a real estate broker, associate real estate broker, or real estate salesman, without alleging and proving that the plaintiff was a duly licensed real estate broker, associate real estate broker, or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

The purpose of the section is to protect the public from fraud and misrepresentation. *Springer v. Rosauer,* 31 Wn. App. 418, 641 P.2d 1216, *review denied,* 97 Wn.2d 1024 (1982). The requirement of this section is not procedural, *West & Wheeler Assocs., Inc. v. Lochridge,* 58 Wn.2d 84,

360 P.2d 739 (1961), and failure to prove licensing is sufficient grounds for dismissal, *Kinney v. Sando,* 28 Wn.2d 252, 182 P.2d 45 (1947).

█ Sherwood alleged in its complaint that it was a licensed broker at all times material to the action. The evidence offered at trial that it was a licensed broker was slim but sufficient. Pebbles testified:

> [E]very real estate office has to have one person licensed under the State of Washington that acts as what's called the designated broker. They are the only ones that are licensed to be able to enter into commission agreements and listing agreements . . .

Later, Vehonsky testified that Sherwood B. Korssjoen, Inc., was the designated broker at Sherwood. These two statements considered together establish, absent contrary evidence, that Sherwood was a licensed broker. The evidence that Sherwood was licensed when it entered into the agreement with Heiman is contained in part in Pebbles' statement: "In late 1980 Sherwood Korssjoen left . . . to start his own company . . ." Since Pebbles also testified that "every real estate office has to have one person licensed", a reasonable inference from the two statements is that Sherwood was licensed in late 1980. The agreement with Heiman was entered into in 1982.

Had Heiman denied that Sherwood was licensed at all material times, Sherwood's proof may have been insufficient. Given the absence of a denial, however, Sherwood has provided adequate evidence that it was licensed. Sherwood thus adequately established it was a licensed broker in compliance with RCW 18.85.100.

Heiman asks this court to extend the statute of frauds beyond its established limits to require that real estate commission agreements for the procurement of a lease be in writing because there is no justification for distinguishing between a commission agreement for the sale of real property and one for the lease of real property. Heiman concedes that the statute of frauds, RCW 19.36.010, does not

apply to commission agreements for the lease of real property. RCW 19.36.010 states in part:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.

■■ The statute of frauds must be strictly construed and not applied to cases that are not squarely within its terms. *Bell v. Hegewald,* 95 Wn.2d 686, 691, 628 P.2d 1305 (1981). An agreement authorizing an agent to procure a lessee for a commission is not an agreement to sell or purchase real estate, and Washington courts have held that subsection (5) is inapplicable to agreements employing brokers to sell or purchase leases of real property. *See Barr v. Campbell Mill Co.,* 154 Wash. 83, 280 P. 929, 284 P. 1119 (1929); *Myers v. Arthur,* 135 Wash. 583, 238 P. 899 (1925).

■ Heiman has not provided a persuasive argument for this court to ignore precedent in this case. The problems he describes as resulting from an oral agreement to procure a lease are incumbent with any oral contract. As Heiman has not presented this court with a highly persuasive argument as to why the oral contract in the instant case, as distinguished from oral contracts in general, should be subject to the statute of frauds, we will not depart from long–established precedent. Moreover, once the Washington Supreme Court has decided an issue of state law, that interpretation is binding on this court until the interpretation is overruled by our Supreme Court. *State v. Gore,* 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984). Therefore, we will not accept Heiman's invitation to extend the statute of frauds to commission agreements for the procurement of a lease.

Heiman argues that the court erred in awarding $30,000 as damages because there was no evidence presented at

trial as to the reasonable value of Sherwood's services except for the provision for a 5 percent commission in the original agreement. The awarded damages were almost $1,700 more than the 5 percent commission. Sherwood responds by asserting that the trial court determined $30,000 was the reasonable value of services rendered.

The trial court, relying on the jury's special interrogatory finding that the parties had entered into a contract, concluded that Heiman breached an implied contract and awarded the reasonable value of Sherwood's services. The reasonable value of the performance, quantum meruit, is the proper measure of damages from a breach of an implied–in–fact contract. *Eaton v. Engelcke Mfg., Inc.,* 37 Wn. App. 677, 682, 681 P.2d 1312 (1984).

■ To recover under quantum meruit the plaintiff must prove the reasonable value of its services. *Eaton,* at 682. Neither the trial court nor Sherwood has cited any evidence in the record that the reasonable value of Sherwood's performance was $30,000. A review of the record confirms this lack of evidence. Sherwood requested $28,314.35 in its complaint, which was the amount of the 5 percent commission in the prior express contract between Sherwood and Heiman. Although the court would have been free to award more than that amount had competent evidence been presented to justify a larger amount, the 5 percent commission was the only evidence presented as to the reasonable value of Sherwood's services. Therefore the court erred in awarding more than that amount in damages. We remand this case to the trial court for a reduction in the amount of damages to $28,314.35.

■ Sherwood requested prejudgment interest in the event this court reduced the damages to the 5 percent commission amount ($28,314.35). An award of prejudgment interest is improper, however, since the amount of damages is the reasonable value of Sherwood's services and was, hence, unliquidated. *Modern Builders, Inc. v. Manke,* 27 Wn. App. 86, 96, 615 P.2d 1332 (1980).

We affirm the jury's findings that there was a contract and that Sherwood was the procuring cause of the new lease; reverse and remand for entry of judgment in the amount of $28,314.35.

SCHOLFIELD, C.J., and GROSSE, J., concur.