[No. 23658-7-III.   Division Three.   May 25, 2006.]

CAREY D. ERWIN ET AL., *Respondents*, v. COTTER HEALTH CENTERS, INC., ET AL., *Appellants*.

---

*Charles K. Wiggins* (of *Wiggins & Masters, P.L.L.C.*) (*James E. Montgomery, Jr.*, of *Law Offices of James E. Montgomery, Jr.* of counsel), for appellants.

*James S. Berg* (of *James S. Berg, P.L.L.C.*), for respondents.

¶1 SWEENEY, C.J. — We are asked here to review a forum selection clause in a multistate contract under which a Washington resident, Carey D. Erwin, arranged the lease of several nursing homes in California and Texas for a California corporation owned by James F. Cotter. The contract specified that any disputes would be resolved under Washington law. Erwin sued Cotter in Washington to collect his commission, and the trial judge upheld the forum selection clause over Cotter's objection. We conclude this was a proper exercise of the trial court's discretion, well supported by the record and the law, and we affirm.

## FACTS

¶2 This case was decided by a trial judge following a four-day bench trial, based on the following facts.

BACKGROUND

¶3 Carey D. Erwin lives and does business in Washington State, where he has been a licensed real estate broker since 1992. He is the sole proprietor of Healthcare Properties, Inc. Since 1987, Erwin has been a consultant in the highly specialized field of health care facilities for seniors. This specialty requires fluency in pertinent government regulations and procedures as well as an understanding of the commercial and legal implications and practices attendant in the sale and lease of health care facilities. Erwin has developed a network of contacts in the health care industry nationwide. He represents clients on both sides of real estate transactions, including sales and leases of health care facilities across the country.

¶4 James F. Cotter lives in Texas. He is a licensed contractor in California, where he once lived. His company, Cotter Health Centers, Inc., is a California corporation. Through his corporation, Cotter owns health care facilities in California, Texas, and Washington. He personally owns nursing homes in Texas and California. The operations for Cotter's health care facilities were structured largely for convenience in licensing, regulation, tax, and liability exposure. The properties are in fact the property of Cotter and under his complete control.

¶5 In 1997, Camlu Care Centers, Inc., a Texas corporation, was leasing and operating three Cotter facilities in Texas. Cotter consulted Erwin to help divest Camlu of its leasehold interest.

¶6 Erwin and Cotter signed a consulting agreement. Through Healthcare Properties, Erwin provided specialized business services to a select category of clients who operate nursing homes on a regional or national basis. Significantly for this dispute, the services Erwin was to perform under the Cotter agreement were "completely different from regular real estate activity in terms of the properties involved and the interstate range of possible transactions." Clerk's Papers (CP) at 31 (Finding of Fact 20).

¶7 After the consulting agreement was signed, Cotter, Erwin, and William Sleeth (Cotter's comptroller and chief financial officer) discussed plans for Erwin to assist Cotter with properties located in the states of Texas, California, Oklahoma, and possibly others. Erwin confirmed to Cotter in February 1999 that he would begin work on seven specific properties in Texas, including the three Camlu properties. Erwin then went to work arranging for transfers from Camlu in Texas to a West Coast operating company called the Ensign Group. Ensign wanted leases with terms longer than the three years remaining on the Camlu leases. This required considerable research on a regional and national scale. CP at 30 (Finding of Fact 11). Erwin renegotiated the Camlu leases, which were then

transferred to Ensign. Cotter paid Erwin a commission pursuant to the consulting agreement.

¶8 The agreement between Cotter and Erwin also anticipated that certain California properties would also be added to the original agreement. So, although the transfer of the Texas properties was the first project, Cotter gave Erwin the go-ahead to work on the transfer of the California properties. These California properties are the subject of this dispute.

THE DISPUTE

¶9 On March 6, 2000, an attorney representing Cotter sent Erwin a letter saying that any agreements between Cotter and Erwin were terminated. The attorney also wrote to the Ensign Group, withdrawing the proposed leases and requesting that the leases be destroyed. Cotter and his attorneys then worked on their own to "liberate" the California facilities and make them available for transfer. At the same time, they negotiated with the Ensign Group and other parties for those California properties. The upshot was that, in February 2001, Cotter and his affiliates signed lease agreements with Ensign for four California properties, effective in November 2001.

¶10 Erwin demanded a fee for his services. Cotter and his companies refused. Erwin sued in Washington to recover commissions for the leases of two facilities in Texas and four in California. Cotter filed suit in Texas and California to bar Erwin from proceeding in Washington. The California court recognized the parties' choice of law provision and stayed Cotter's action pending the outcome of the Washington litigation. CP at 36 (Finding of Fact 51). Cotter contends that the dispute should be resolved under California and Texas law and that the contract is illegal under the law of both those states.

THE COURT'S DECISION

¶11 The trial court concluded that Cotter's consulting agreement with Erwin was enforceable in Washington and

that Cotter submitted to personal jurisdiction in Washington under the written agreement. The contract provided that:

> Any dispute regarding the interpretation or enforcement of this Agreement shall by agreement of the parties be resolved in the State of Washington pursuant to its laws as the parties acknowledge that jurisdiction lies therein.

CP at 266. It also provided that:

> Should property(ies) that are listed on Addendum "A" be located in a state other than the state of Washington then owner [Cotter] expressly acknowledges that they are not knowingly entering into an agreement which is illegal by contracting with real estate broker which is not licensed in state where facilities are located. In addition Client [Cotter] agrees to waive any such provision that would allow for a contest of fees based on the fact the Consultant [Erwin] is not licensed as a real estate broker in the state where facilities are located.

CP at 266. The agreement goes on to acknowledge that the agreement is not the typical listing agreement with a real estate broker or agent.

¶12 The trial court concluded that the contract was not illegal under Washington law. The court found that Erwin did not provide classic real estate brokering. Instead, he performed specialized national facilities marketing consultant services. CP at 31 (Finding of Fact 20). Accordingly, the court concluded that Erwin was not required to be licensed in every state touched by the transaction. CP at 38 (Conclusion of Law 11).

¶13 The court also found that Erwin was instrumental in introducing the Ensign Group and facilitating the transfer of the Camlu leases from Camlu to the Ensign Group. The court then awarded consulting fees and attorney fees to Erwin and Healthcare Properties, Inc. Cotter appealed.

## DISCUSSION

Choice of Law

¶14 Cotter argues that Erwin is not a licensed real estate broker in either Texas or California. He was not,

therefore, entitled to a commission for what amounts to real estate brokerage services in either of those states. Erwin responds that the express choice of law in the agreement was Washington and that, so long as it does not offend the public policy of Washington as the forum state, the court should enforce the agreement.

*Standard of Review*

¶15 We will enforce a forum selection clause provided it is fair and reasonable. *Exum v. Vantage Press, Inc.*, 17 Wn. App. 477, 478, 563 P.2d 1314 (1977). We generally review a court's decision to enforce a forum selection clause for abuse of discretion. *Dix v. ICT Group, Inc.*, 125 Wn. App. 929, 934, 106 P.3d 841, *review granted*, 155 Wn.2d 1024, 126 P.3d 820 (2005). The standard of review applicable here, however, is not clear. Both abuse of discretion and de novo review have been applied. *See Bank of Am., N.A. v. Miller*, 108 Wn. App. 745, 748, 33 P.3d 91 (2001). The analysis of many so-called "abuse of discretion" questions can be broken down into questions of fact and the conclusions of law these facts support. *State v. Karpenski*, 94 Wn. App. 80, 102, 971 P.2d 553 (1999). That is what we do here.

*Findings of Fact*

¶16 The first question is whether there is sufficient evidence to support the findings underlying the court's decision. *Cox v. Lewiston Grain Growers, Inc.*, 86 Wn. App. 357, 367, 936 P.2d 1191 (1997).

¶17 Here, the essential facts are easily supported by this record. Both Cotter and Erwin were experienced, seasoned businessmen with a particular expertise in the field of nursing homes and elder health care facilities. Erwin had both expertise and industry-wide contacts across state borders. Cotter wanted to take advantage of both that expertise and those contacts to extricate himself from what had proved to be very unfavorable lease arrangements with Camlu.

¶18 Erwin's services required transfer of leases from one entity to another. That naturally suggested Washington as the forum state because Erwin was licensed only in Washington. It was for that reason that these sophisticated businessmen freely negotiated and designated Washington as the forum state. Moreover, the agreement freely acknowledges the legal complications created by the fact that the properties were located in Texas and California.

*Conclusions of Law*

■ ¶19 The next question is whether the findings are sufficient to support the judge's conclusion that the choice of Washington law was effective. That is a question of law that we review de novo. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

■ ¶20 We will enforce a freely negotiated forum selection clause unless it is unfair or unreasonable. *Exum*, 17 Wn. App. at 478. This policy enhances the predictability of contractual obligations. *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 617, 937 P.2d 1158 (1997). When the chosen state has some substantial relationship to either the parties or the contract, we assume the parties had a reasonable basis for their choice of forum. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187, cmt. f (1971). A substantial relationship exists when one of the parties is domiciled and has his principal place of business in the state. *Id.* Here, Erwin lives and operates his business in Washington.

■■ ¶21 The primary aim of contract law is to secure the justifiable expectations of the parties and to enable them to predict their rights and responsibilities under the contract. *Id.* § 187, cmt. e. In multistate transactions, certainty and predictability are likely to be enhanced when the parties choose the law that governs the validity of their own contract. *Id.* Accordingly, when parties to a contract choose to apply the law of a particular state, the courts will apply that state's law to an issue so long as the issue is one

the parties could have resolved by an explicit provision in their agreement. *Id.* § 187(1).[1]

¶22 That is the case here. The particular issue here is generated by Cotter's agreement to pay Erwin to arrange a series of specialized transactions in multiple states. This is an issue the parties could and did resolve by an explicit provision in their agreement.

*No Conflict of Laws*

■ ¶23 We will nonetheless reject a forum selection clause if (a) a conflict exists between the laws of the chosen state and those of another state, (b) the other state has a greater interest in deciding the issue, and (c) application of the forum selection clause would be contrary to that state's public policy. *Id.* § 187(2)(b). Cotter asserts that we must undertake a conflict of laws analysis. The trial court correctly concluded, however, that the facts do not present a conflict of laws problem here. CP at 38 (Conclusion of Law 14).

■ ¶24 A conflict of laws exists when "two or more states have an interest in the determination of the particular issue." RESTATEMENT, *supra*, § 187(2), cmt. d. If the law is the same and the resolution of a dispute would be the same in all potentially affected states, no state has an interest in having its own law applied. There is no conflict of laws. *Pac. States Cut Stone Co. v. Goble*, 70 Wn.2d 907, 909, 425 P.2d 631 (1967).

■ ¶25 Providing real estate brokerage services for commission without a license is illegal in all three states—Washington, California, and Texas—and no action to recover a commission may be maintained in any of these states. RCW 18.85.100; CAL. BUS. & PROF. CODE

---

[1] Cotter contends the choice of Washington law in this contract is ineffective because the subject matter of the contract is illegal under the law of California. Clearly, however, the legality of a contract must be determined under the applicable law. The effectiveness of a choice of law provision must, therefore, be adjudicated before the chosen law is applied.

§ 10136;[2] Tex. Occ. Code Ann. § 1101.351. So, regardless of which state's law we apply, the dispositive question is whether Erwin can maintain an action for a commission for the services he provided to Cotter; that is, whether the contract was void for illegality.

¶26 The trial court concluded that the contract was legal under the laws of Washington. The court found that Erwin did not provide classic real estate brokering. Instead, he performed specialized national facilities marketing consultant services. CP at 31 (Finding of Fact 20). Accordingly, the court concluded that Erwin was not required to be licensed in every state touched by the transaction. CP at 38 (Conclusion of Law 11). The trial court's determination is supported by the record of the services Erwin provided. This was not a typical "listing agreement." It was instead a hybrid "consulting agreement" calculated to capitalize on Erwin's unique expertise in this highly regulated industry and his contacts in the industry throughout the country. The court's conclusion is also consistent with the contract itself. The parties agree that they are aware of brokerage commission laws but are contracting for services for which a commission can be paid.

¶27 And we agree given the nature of the undertaking here—transferring business interests in a national market—that it did not make any difference where Erwin lived or worked, or for that matter where he was licensed. The

---

[2] Compare the Washington and California statutes:

No suit or action shall be brought for the collection of compensation as a real estate broker, associate real estate broker, or real estate salesperson, without alleging and proving that the plaintiff was a *duly licensed real estate broker*, associate real estate broker, or real estate salesperson prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

RCW 18.85.100 (emphasis added).

No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a *duly licensed real estate broker* or real estate salesman at the time the alleged cause of action arose.

Cal. Bus. & Prof. Code § 10136 (emphasis added).

crucial qualification, and what Erwin sold to Cotter, was his competence to advise on the management and leasing of properties, as part of a very unique industry. And that is exactly what Erwin did. These businessmen had a good understanding of the problems, pitfalls, and opportunities available under this consulting agreement. They deliberately chose to refer to it as a consulting agreement.

¶28 Moreover, the policy underlying California's licensing law is the same as Washington's—"to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners." *Schantz v. Ellsworth*, 19 Cal. App. 3d 289, 292-93, 96 Cal. Rptr. 783 (1971). As in Washington, California courts recognize that this policy is satisfied by proof of a valid real estate broker's license. *Estate of Baldwin*, 34 Cal. App. 3d 596, 605, 110 Cal. Rptr. 189 (1973). Like Washington, California does not construe its licensing laws so literally as to require exact compliance if to do so " 'would transform the statute into an "unwarranted shield for the avoidance of a just obligation." ' " *Id.* (quoting *Schantz*, 19 Cal. App. 3d at 293) (quoting *Latipac, Inc. v. Superior Court*, 64 Cal. 2d 278, 281, 411 P.2d 564, 49 Cal. Rptr. 676 (1966))).

¶29 Ultimately, then, we agree with the trial court's conclusion that applying Washington law did not violate California or Texas public policy concerning licensing. CP at 38 (Conclusion of Law 13).

¶30 The law of one state or another had to apply. And the fact that we or Cotter can argue that California or Texas could also have been chosen will not override a freely negotiated contract. We certainly cannot say that the trial court abused its discretion by choosing to enforce the agreement. We conclude that the interests of the parties are best served by leaving them exactly where they placed themselves—litigating this dispute in Washington.

STATUTE OF FRAUDS

¶31 Cotter also contends that Erwin cannot collect a commission for the California facilities because they were

not part of the written agreement. Thus, Cotter contends, Washington's statute of frauds, RCW 64.04.010, applies. But the statute of frauds applies solely to agreements to buy and sell real estate. *Sherwood B. Korssjoen, Inc. v. Heiman*, 52 Wn. App. 843, 851-52, 765 P.2d 301 (1988). Thus the statute of frauds is not a bar under Washington law to enforcing an agreement to procure a lessee. Moreover, the trial court correctly concluded that written correspondence between Erwin and Sleeth satisfied the statute regarding the addition of the disputed properties to the agreement.

ATTORNEY FEES

¶32  Finally, Cotter contends that Erwin is not entitled to attorney fees under the fee provision in the agreement because the agreement is not enforceable.

¶33  Attorney fees may be awarded if authorized by statute, private agreement, or a recognized ground of equity. *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). When a contract contains an attorney fee provision, the prevailing party is entitled to an award of fees and costs. *Id.* The prevailing party is entitled to fees even if the contract is invalidated. *Id.*

¶34  The agreement contained an attorney fee provision. Erwin is the prevailing party. He is, then, entitled to fees and costs on appeal.

CONCLUSION

¶35  We affirm the trial judge's conclusion that Washington is the appropriate forum state. We affirm the award of fees in the trial court. And we award costs and fees on appeal.

BROWN and KATO, JJ., concur.

Review granted at 159 Wn.2d 1011 (2007).