[No. 23995-1-III.   Division Three.   November 16, 2006.]

SHELLEY BARTLETT, *as Co-Trustee*, ET AL., *Respondents*, v. MARCY BETLACH ET AL., *Appellants*.

---

*Erika Balazs* and *Thomas M. Culbertson*, for appellants.

*Greg M. Devlin* (of *Miller Devlin & McLean, P.S.*) and *John F. Bury*, for respondents.

¶1 SWEENEY, C.J. — This is a dispute over discharge of a trustee and enforcement of an agreement by the trust to sell real estate, despite the absence of a legal description in either the offer or acceptance. We affirm the trial court's decision to reinstate the trustee because the beneficiaries failed to show cause for her discharge. But we reverse the court's decision to specifically enforce the agreement to sell trust real estate because neither the offer nor the acceptance included a legally adequate description of the property required by the statute of frauds.

## FACTS

¶2 Bernadine Betlach established a living trust. The trust property included a house and approximately 75 acres of land. The land is referred to as parcels A, B, and C: parcel A (house and 20 acres), parcel B (20 acres), and parcel C (35 acres). Parcels A and B are not legally partitioned.

¶3 Bernadine had five children: Nancy Lyn Jenkins, Steven Roy Betlach, Shelley Bartlett, William Barrett Betlach, and Marcy Betlach. Bernadine designated each child a beneficiary with an equal share. She designated Shelley and Marcy as trustees.

¶4 Bernadine died in February 2003.

¶5 Nathan Bartlett lived in the house on parcel A before Bernadine's death. Nathan is Shelley's son. The trustees hired Nathan as the caretaker for the property.

¶6 Shelley's daughter and son-in-law are Randy and Rachel Krum. Marcy, Nancy, Steven, and William offered to sell parcel A to Randy and Rachel for $255,000 in 2003. The property had been appraised at $325,000, and everyone knew that. The offer provided that Nancy would receive $5,000 more than the other beneficiaries. Shelley refused to join in the offer because Nancy would receive more money.

¶7 Shelley proposed to sell parcel A to Randy and Rachel for $255,000 in February 2004. The agreement set out a legal description for parcel A as if it had been separated from parcel B. Marcy refused to join in this offer.

¶8 The beneficiaries became dissatisfied with Shelley as a trustee and voted her out and voted Steven in as trustee.

¶9 Nathan moved out of the house. And Randy and Rachel moved in on March 6, 2004.

¶10 The trustees (now Marcy and Steven) and a majority of the beneficiaries offered to sell parcel A to Randy and Rachel for $255,000. They proposed that Randy and Rachel pay $1,000 per month in rent for early possession. Randy and Rachel accepted the proposal to buy and to pay rent. Both the offer and the acceptance acknowledged that a

purchase and sale agreement needed to be drafted. Neither letter included a legal description for parcel A.

¶11 Randy and Rachel obtained financing to purchase parcel A. No purchase agreement was ever drafted. Randy and Rachel continued to live in the house but did not pay rent.

¶12 Shelley sued to set aside her dismissal as trustee. Rachel and Randy intervened and sued for specific performance of the agreement to sell them parcel A.

¶13 The trial court concluded that the beneficiaries had not shown adequate cause to remove Shelley as trustee and ordered her reinstated. The court also ordered specific performance of the agreement to sell parcel A to Randy and Rachel. The court awarded Randy and Rachel their attorney fees and costs and also awarded Shelley her attorney fees and costs, all to be paid by the trust. Marcy, Nancy, Steven, and William (hereafter Marcy) appeal Shelley's reinstatement as trustee. They also appeal the order compelling specific enforcement of the agreement to sell parcel A.

## DISCUSSION

SALE OF PARCEL A

*Statute of Frauds*

¶14 Marcy notes that neither the offer nor acceptance letters include a legal description of the property. She argues then that there is no enforceable contract because the agreement does not satisfy the statute of frauds. Randy and Rachel respond that there is an adequate legal description by reference to a street address. And the agreement is saved, in any event, by the equitable doctrine of part performance or the equitable doctrine of judicial admission.

¶15 These contentions raise questions of law, and so our review is de novo. *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 832, 100 P.3d 791 (2004).

¶16 Marcy challenges several of the court's conclusions of law supporting its decision to specifically enforce the sale agreement. She challenges conclusions 2, 3, 4, 12, 14, and 15. They address the existence of a valid contract to sell, the adequacy of the legal description, and whether the doctrine of part performance applies. Marcy argues that the requirements for part performance were not met here.

¶17 Conveyance of real property requires a legal description. *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 881-84, 983 P.2d 653 (1999); *Martin v. Seigel*, 35 Wn.2d 223, 229, 212 P.2d 107 (1949). Reference to the property's street address, city, and state is not enough. *Key Design*, 138 Wn.2d at 878, 881-84; *Seigel*, 35 Wn.2d at 228-29. " '[A] contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony [or extrinsic evidence], or else it must contain a reference to another instrument which does contain a sufficient description.' " *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995) (quoting *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960)); *Tenco, Inc. v. Manning*, 59 Wn.2d 479, 485, 368 P.2d 372 (1962).

¶18 In 2004 Shelley, then cotrustee, offered to sell parcel A to Randy and Rachel. The offer included an adequate legal description. But her cotrustee refused to sign the offer. The beneficiaries then removed Shelley as trustee and replaced her.

¶19 The new trustees offered to sell parcel A to Randy and Rachel for $255,000. But the offer simply describes the property as "the house and 20 acres in which you currently reside." Ex. R213. And the acceptance does not improve the description: "[p]lease regard this letter as formal notice of acceptance by [Randy and Rachel] of the offer to sell the house and 20 acres in which they currently reside." Ex. R216. Neither includes a legal description for parcel A. Exs. R213, R216; *Key Design*, 138 Wn.2d at 881-84; *Seigel*, 35 Wn.2d at 229.

¶20 The street address is listed at the top of the offer letter. But that is not a legally sufficient property descrip-

tion. *Key Design*, 138 Wn.2d at 878, 881-84; *Seigel*, 35 Wn.2d at 228-29. Nor do these exchanges reference another document with an adequate property description. Randy and Rachel note that Shelley's original offer referenced the correct street address and so did the offer they accepted. *Ting*, 125 Wn.2d at 551. But a separate document cannot be incorporated into a real estate agreement simply because it contains the same address. *See Garrett v. Shriners Hosps. for Crippled Children*, 13 Wn. App. 77, 79-80, 533 P.2d 144 (1975).

¶21 The offer and acceptance letters do not, then, satisfy the statute of frauds. *Seigel*, 35 Wn.2d at 229. And the agreement is not enforceable. *Id.* Moreover, both the offer and the acceptance letters acknowledge that a real estate purchase and sale agreement was needed. They are correct. The offer and acceptance here amounted to an agreement to enter into a real estate purchase and sale agreement.

*Part Performance*

¶22 Randy and Rachel next argue that the trial court properly enforced this sale by applying the doctrine of part performance. Randy and Rachel sold their home, set up financing, and took possession. Randy and Rachel also laid carpet.

¶23 Application of the doctrine requires consideration of three factors: (1) possession; (2) payment or tender of consideration; and (3) permanent, substantial, and valuable improvements. *Powers v. Hastings*, 93 Wn.2d 709, 717, 612 P.2d 371 (1980), *quoted in Ting*, 125 Wn.2d at 556. Generally, the party asserting part performance must show two of these three factors. *Ting*, 125 Wn.2d at 557-58.

¶24 Randy and Rachel moved into the house on parcel A on March 6, 2004. The offer to sell was dated April 1, 2004, almost a month later. Randy and Rachel agreed to pay $1,000 per month for early possession. They secured financing. But they neither tendered the purchase price nor paid rent. And there is no showing in this record to support the

trial court's finding that they replaced carpeting or, of course, what the cost or effect of that was on the value of the house. Improvements must be permanent, substantial, and valuable. *Powers*, 93 Wn.2d at 717, *quoted in Ting*, 125 Wn.2d at 556.

¶25 In sum then, there is no showing on this record of possession, pursuant to any contract; no showing that the putative purchasers tendered payment; and no showing of valuable improvements. The court's findings do not, then, support its conclusion that Randy and Rachel met any of the requirements for part performance. *Bang Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 530, 29 P.3d 689 (2001).

## Judicial Admissions

¶26 Randy and Rachel next argue that the agreement should be enforced because Marcy admitted an adequate legal description in her pleadings. They rely on the judicial admissions doctrine set out in *Sea-Van Investments Associates v. Hamilton*.[1] Their reliance is misplaced. Our Supreme Court reversed *Sea-Van Investments* and has subsequently declined to adopt the judicial admissions doctrine. *Key Design*, 138 Wn.2d at 885, 888.

¶27 The judicial admissions doctrine would permit us to enforce an agreement for the sale of real estate if the objecting party admits the validity of the agreement during the court proceedings. *Id.* at 884. But this state has rejected the doctrine. *Id.* at 884-85, 888.

## Attorney Fees

¶28 Marcy next argues that the court erred when it awarded Randy and Rachel their attorney fees based on the existence of a contract. First, she says, the court should not have enforced the contract. Second, she argues that no signed written contract provided for fees.

---

[1] *Sea-Van Invs. Assocs. v. Hamilton*, 71 Wn. App. 537, 861 P.2d 485 (1993), *rev'd*, 125 Wn.2d 120, 881 P.2d 1035 (1994).

¶29 The legal authority for the court to award attorney fees is a question of law. *Boules v. Gull Indus., Inc.*, 133 Wn. App. 85, 88, 134 P.3d 1195 (2006). A contract providing for attorney fees is a recognized ground for the award of fees. *Mt. Hood Beverage Co. v. Constellation Brands, Inc.*, 149 Wn.2d 98, 121, 63 P.3d 779 (2003). The contract must, of course, contain a specific attorney fees provision. RCW 4.84.330; *Boyd v. Davis*, 127 Wn.2d 256, 264, 897 P.2d 1239 (1995); *Hudson v. Condon*, 101 Wn. App. 866, 877, 6 P.3d 615 (2000).

¶30 Here, the trial court concluded that Randy and Rachel were entitled to their fees based on a contract. Clerk's Papers (CP) at 302. But, as we have concluded, there is no valid contract here. And even if the exchange of letters could be considered a contract, neither provides for attorney fees. Even the prior offer to sell, signed only by Shelley, did not contain an attorney fees provision.

¶31 The court had no legal basis, then, upon which to award fees.

¶32 Randy and Rachel ask us to affirm the court's attorney fees award under a "bad faith" exception. Resp't's Br. at 24. They have not, however, shown that the trustees (the trust) acted in bad faith.

TERMINATION OF SHELLEY AS TRUSTEE

¶33 Marcy next contends that the trial court erred by reinstating Shelley as trustee. She asserts that the court should have instead deferred to the beneficiaries' claim of just cause to terminate. The question, Marcy asserts, is not whether the trial judge agreed with the beneficiaries' decision but rather whether there is evidence that, if believed, would support the beneficiaries' decision.

¶34 Shelley responds that the question before the court was whether the beneficiaries had cause to remove her as trustee. And the court correctly concluded that they did not.

¶35 We generally review a trial court's decision to reinstate a trustee for abuse of discretion. *See In re Marriage of Petrie*, 105 Wn. App. 268, 275, 19 P.3d 443 (2001).

¶36  But the analysis of many so-called "abuse of discretion" questions can (should) be separated into questions of fact and the conclusions of law these facts support. *Erwin v. Cotter Health Ctrs., Inc.*, 133 Wn. App. 143, 150, 135 P.3d 547 (2006); *State v. Karpenski*, 94 Wn. App. 80, 102, 971 P.2d 553 (1999).

¶37  The first question is whether sufficient evidence supports the findings of fact underlying the trial court's decision. *Erwin*, 133 Wn. App. at 150; *Cox v. Lewiston Grain Growers, Inc.*, 86 Wn. App. 357, 367, 936 P.2d 1191 (1997). When reviewing findings of fact entered by a trial court, our role is to determine whether substantial evidence supports the findings. *Erwin*, 133 Wn. App. at 150; *Ridgeview Props. v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). The next question is whether the findings are sufficient to support the trial court's decision. *Erwin*, 133 Wn. App. at 151. This is a question of law that we review de novo. *Id.*

¶38  So, in reviewing the trial court's decision to reinstate the trustee for abuse of discretion, we ask whether the findings of fact are sufficient to support the trial court's decision that the beneficiaries failed to show just cause. This is a question of law that we review de novo. *See id.*

¶39  Marcy challenges the trial court's findings of fact 21 and 22.[2] She also challenges the court's conclusions of law

---

[2] Finding of fact 21:

Respondents [Marcy, Nancy, Steven, and William] created a list of items they believed to be the basis for removing Petitioner [Shelley] as Co-Trustee, for cause. The Court finds that said list details mere disagreements in managing the Trust, but do [sic] not establish that Petitioner was not performing as a Co-Trustee. Therefore, the Court finds no proper cause for the removal of Petitioner as Co-Trustee. The Court also finds that Petitioner was not given proper notice of the March 29, 2004 meeting, as is required by the Trust. Therefore, Petitioner was improperly removed.

CP at 300.

Finding of fact 22:

The Court finds that the "election" of Steven Roy Betlach as Co-Trustee was not authorized by the Trust and was therefore improper.

CP at 300.

7 and 8.[3] The essential findings are the listed reasons for discharge referenced in finding 21. That finding is essentially undisputed.

¶40 The next question, then, is whether the findings are sufficient to support the trial court's decision that just cause had not been shown to remove the trustee. In other words, the essential conclusion of law is that the reasons advanced for discharge were legally insufficient under the trust to terminate a trustee for cause. Again, this is a question of law. *See Erwin*, 133 Wn. App. at 151. The trust here allows the majority of the beneficiaries to remove a trustee "at any time *for cause*." Ex. P101 at 105 (emphasis added).

¶41 We determine a settlor's intent in a trust document by construing the document as a whole. *Old Nat'l Bank & Union Trust Co. of Spokane v. Hughes*, 16 Wn.2d 584, 587, 134 P.2d 63 (1943), *cited in Waits v. Hamlin*, 55 Wn. App. 193, 199, 776 P.2d 1003 (1989). The trust does not define the phrase "for cause." Ex. P101. The trust does require construction in accordance with the law of the state of Washington. We will then construe this agreement based on our reading of the whole document and consistent with state law. Ex. P101 at 105, 141; *Hughes*, 16 Wn.2d at 587. We look to other cases to decide the meaning of reasonable cause for guidance.

¶42 "A trustee owes the beneficiaries of the trust 'the highest degree of good faith, care, loyalty and

---

[3] Conclusion of law 7:

No legal basis or cause for removal of Petitioner as Co-Trustee exists. The Court finds that Petitioner was improperly removed by Respondents. Further, Petitioner was not given notice of the March 29, 2004 meeting as is required by the Trust. As such, the "election" of Steven Roy Betlach as Co-Trustee was improper and is declared void.

CP at 302.

Conclusion of law 8:

As a result of her improper removal as Co-Trustee, Petitioner is hereby reinstated as such. Petitioner is awarded her reasonable attorney's fees and costs, which shall be paid from the Trust. The sum of $22,520.31 shall be paid to Greg M. Devlin. The Court finds the fees requested by Michael C. Loft to be excessive and none shall be awarded until substantiated to the court on motion and hearing.

CP at 302.

integrity.' " *Petrie*, 105 Wn. App. at 275 (quoting *Esmieu v. Schrag*, 88 Wn.2d 490, 498, 563 P.2d 203 (1977)). The beneficiaries may remove a trustee, under state law, for "reasonable cause." RCW 11.98.039(4); RCW 11.96A.020(1)(b). Reasonable cause has generally been construed as requiring a breach of fiduciary duty, a conflict of interest, or bad will generated by litigation. *In re Estate of Ehlers*, 80 Wn. App. 751, 761, 911 P.2d 1017 (1996). But removal must be necessary to save the trust. *Id.*

¶43 The beneficiaries posit a number of reasons as cause for Shelley's removal: Shelley (1) wanted to sell trust property for less than fair market value to her daughter and son-in-law, (2) refused to accept any of the proposed suggestions on how to settle the estate, (3) refused to remove her son as caretaker of the trust property, (4) allowed her daughter and son-in-law to move into the house on the trust property without permission, and (5) wanted to buy the trust property below market value. Appellant's Br. at 27-28. They argue this shows self-dealing and that, in turn, supports the necessary cause required by the trust to remove her.

¶44 But the beneficiaries all agreed, at separate times, to sell parcel A to Shelley's daughter and son-in-law, Randy and Rachel, for less than market value. Exs. P116, R211, R213. They agreed to sell parcel A to Randy and Rachel for $255,000 in May 2003. Ex. P116. They understood that the appraised fair market value was $325,000. Ex. P116. Shelley made essentially the same offer as the beneficiaries did after they terminated her.

¶45 Shelley's son, Nathan, lived in the house on parcel A before Bernadine's death. But the beneficiaries also hired him to act as the property caretaker after Bernadine's death. Randy and Rachel moved into the house on parcel A (a month before they received a formal offer to purchase the house). Questions arose as to whether Shelley allowed either Nathan or Randy and Rachel to reside on the property without permission. *See* Ex. R225; Report of Proceedings at 282, 429, 442. But, nonetheless, the successor trustees agreed it

was in the best interest of the trust to have someone living on the property to care for it.

¶46 Shelley also made several attempts to purchase parcels B and C from the trust. She wanted to use her one-fifth share of the trust as a credit toward the purchase of parcels B and C. She sought a court order. The court granted her a limited time to purchase the property for cash—without credit for her share of the trust. Shelley ultimately did not make an offer.

¶47 The facts here support the court's conclusion that Marcy showed "mere disagreements in managing the Trust, but [did] not establish that [Shelley] was not performing as a Co-Trustee." CP at 300; *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); *Ehlers*, 80 Wn. App. at 761. Shelley is a beneficiary of the trust, along with Marcy. Both Shelley and Marcy stand to benefit from the trust. And the disagreements here are just that, disagreements. Many of the suggestions here for sale, occupancy, and use of the property benefited one or the other.

¶48 The court's finding supports its conclusion that there was "[n]o legal basis or cause" to remove Shelley as a cotrustee. CP at 302; *Bang Nguyen*, 144 Wn.2d at 530; *Ehlers*, 80 Wn. App. at 761. Ultimately, this is an exercise in the court's equitable authority. *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 551, 114 P.3d 1182 (2005). The trial court properly exercised its authority to reinstate Shelley as a trustee. RCW 11.96A.020(1)(b); *see Petrie*, 105 Wn. App. at 275.

ATTORNEY FEES AND COSTS—TRUST LITIGATION

¶49 Marcy urges us to reverse the trial court's attorney fees award because Shelley was properly removed as a trustee and because fees should not be awarded against a trust where the litigation does not benefit the trust.

¶50 A trial court has broad discretion to award attorney fees:

> Either the superior court or the court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs to be paid in such amount and in such manner as the court determines to be equitable.

RCW 11.96A.150(1). We will disturb a trial court's award of fees only upon a showing of a clear abuse of discretion. *In re Estate of Black*, 153 Wn.2d 152, 173, 102 P.3d 796 (2004).

¶51 Attorney fees may generally be awarded against a trust only where the litigation results in a substantial benefit to the trust. *In re Estate of Niehenke*, 117 Wn.2d 631, 648, 818 P.2d 1324 (1991). Fees may be awarded to both parties where all of the beneficiaries are involved and where the litigation affects the rights of all the beneficiaries. *Black*, 153 Wn.2d at 173-74; *Estate of Kvande v. Olsen*, 74 Wn. App. 65, 71, 871 P.2d 669 (1994) (award must not affect the interests of uninvolved beneficiaries).

¶52 All of the beneficiaries were involved in this litigation. *Black*, 153 Wn.2d at 173-74. The litigation affected each of their rights. *Id.* The litigation determined who would manage the trust. The beneficiaries believed that Shelley was not properly managing the trust. These are tenable grounds for the court to award fees. The litigation benefited the trust since it furthered Bernadine's intent that Shelley manage the trust. *See id.* at 174.

ATTORNEY FEES ON APPEAL

¶53 We have broad discretion to award attorney fees and costs on appeal. RAP 18.1; RCW 11.96A.150. Here, Shelley is the only prevailing party. The litigation benefited the trust and it involved all the beneficiaries. *See Black*, 153 Wn.2d at 173-74; *Niehenke*, 117 Wn.2d at 648. The trust must pay Shelley's attorney fees and costs on appeal. RAP 18.1; RCW 11.96A.150; *see Black*, 153 Wn.2d at 173-74.

HOLDING

¶54  We reverse the order of specific performance requiring the trust to convey parcel A to Randy and Rachel. We affirm the reinstatement of Shelley as a trustee. We affirm the court's award of attorney fees to Shelley; we reverse the award of fees and costs to Randy and Rachel. We award Shelley her fees on appeal.

SCHULTHEIS and KULIK, JJ., concur.

Reconsideration denied January 9, 2007.

Review denied at 162 Wn.2d 1004 (2007).