[No. 9197–0–III.   Division Three.   August 10, 1989.]

NANCY WAITS, ET AL, *Appellants,* v. LOIS DENISE HAMLIN, ET AL, *Respondents.*

*Leslie Weatherhead* and *Witherspoon, Kelley, Davenport & Toole,* for appellants.

*Gregory Dennis, Landerholm, Memovich, Lansverk & Whitesides, John Holmes,* and *Graham & Dunn,* for respondents.

SHIELDS, J.—Nancy (Waits) Redfield brought suit against L. Denise (Waits) Hamlin, David Hamlin, and Rainier National Bank to recover money for her minor children which was to be held in a trust established by Robert Waits, their deceased father. The trial court dismissed the action against all three defendants on their motions for summary judgment. We reverse and remand for trial.

Robert Waits married Denise in September 1982, after his divorce from Nancy. In January 1984, Mr. Waits was diagnosed as having cancer. Between the time of the initial diagnosis and his death on September 16, 1984, Mr. Waits set up a trust (hereafter referred to as the umbrella trust) to receive and distribute the anticipated proceeds from several life insurance policies. His intent, which is basically undisputed by the parties, was to use the assets of the receiving "umbrella" trust to finance three "duckling" trusts—one for Denise's support (Trust A), one for the children's college education and a nest egg to help them get established (Trust B), and one for Nancy and the children's support (Trust C). It is also undisputed Mr. Waits was concerned about a future remarriage by Nancy and so, to protect the children's assets from predation, he named Denise as cotrustee with Rainier Bank.

Anthony Sisti, a trust officer, vice–president and manager of the Kennewick branch of Rainier Bank, advised Mr. Waits on the establishment of the trusts. Mr. Sisti stated Mr. Waits told him the insurance proceeds would be substantial, including several policies which then named his children as beneficiaries, and others naming Nancy as beneficiary. Mr. Waits' brother, who was also consulted when the trusts were created, stated the amount of insurance proceeds needed to accomplish the purpose of Trust B was $150,000 ($75,000 for each child) and for Trust C, $120,000, to be derived from both the trust assets and the divorce settlement.

When preliminary meetings were completed, Mr. Sisti contacted Philip Raekes, a Kennewick attorney who represented Rainier, to draft the trust document. Mr. Raekes never communicated directly with Mr. Waits, but drafted a trust agreement which was signed by Mr. Waits in the hospital on July 23, 1984. Mr. Sisti later expressed some reservations concerning the document and whether it adequately expressed Mr. Waits' intent, but felt changes could be made later when Mr. Waits was better. Mr. Waits died without making any changes.

After Mr. Waits' death in September, Denise proceeded to handle the affairs of his estate. Approximately $530,000 was received from the various insurance policies and deposited directly in the umbrella trust. Denise paid the debts incurred from the last illness, funeral expenses and other outstanding debts the couple had acquired, including a mortgage balance of approximately $50,000 on the couple's home. However, at that time, she did not fund either Trust B for the children, or Trust C for Nancy and the children's support.

In March 1985, a month before she remarried and moved to Camas, Washington, Denise called Rainier Bank and requested an immediate cash withdrawal of $220,000 from the umbrella trust and transfer of that amount to Trust A, the one for her support. When questioned by Mr. Sisti, she explained she intended to invest the money herself to save the trustee fees charged by the bank. Mr. Sisti refused to allow the withdrawal and sought legal advice from Mr. Raekes who concluded that Denise had full discretion in funding each duckling trust and that any amount allocated to Trust A could be spent by her in any manner. Instead of the full amount, Denise withdrew an unknown amount of less than $50,000, and transferred the administration of the four trusts to the Vancouver branch of Rainier Bank.

In May 1985, Nancy filed a creditor's claim against the estate for $60,000: $50,000 represented the amount of life insurance the dissolution decree required to be maintained as part of the support obligation, and $10,000 was the balance owing on a promissory note. Denise, who considered the $50,000 amount to be the extent of Mr. Waits' support obligation under Trust C paid the $60,000 in June 1985 from the umbrella trust, not from the estate. Two years later, the balance of Trust B was $65,000, and Trust C, nothing.[1]

---

[1]There is no evidence to indicate the balance of Trust A.

On January 26, 1988, Nancy filed an amended complaint for breach of fiduciary duty, for removal of Denise as trustee, for an order requiring that Trust B be funded with $150,000, Trust C with $120,000, and should assets not be available, for damages of $270,000. The complaint also sought a full accounting by the trustees and an award of attorney fees under RCW 11.96.140. The amended complaint further alleged Denise had withdrawn approximately $148,800 of trust assets for her sole use. The court, upon the defendants' motion for summary judgment, dismissed the action, concluding the language of the trust agreement provided Denise with full discretion in funding each of the duckling trusts.

The applicable trust provisions state:

### LIFE INSURANCE TRUST AGREEMENT

. . . .
H. Trustee's decision
Unless specifically limited, all judgments, decisions, actions and discretions conferred hereunder the Trustee shall be absolute and conclusive on all persons.
. . . .

### DISTRIBUTION OF TRUST ESTATE
### SCHEDULE "B"

Following the death of the Trustor, the income and principal of the Trust Estate, after deducting the charges, expenses, and payment of all claims and liabilities *excepting the first mortgage held by Washington Mutual,*[2] on my residence at 31005 W. Reata Road, Kennewick, Washington, as herein provided, *shall* be distributed as follows:

. . . .
*B. Direct Distribution From Trust*
Within the limitation of available funds and the desire and purposes of the three trusts (Trust A, Trust B, and Trust C) as hereinafter set forth, the co–trustee, *Lois Denise Waits, has sole authority, in her complete discretion, to make cash distributions to each of the below–named* and her decision as to the amounts thereof to be distributed shall be final:

Nancy Keil Waits    An amount not to exceed $25,000 and to be allocated as a *portion* of the assets placed in Trust C

. . . .

---

[2]Rainier authorized the payment of the mortgage in full from trust assets.

*C. Division Into Separate Trust*

Except as may be otherwise specifically provided as to any part of the Trust Estate either by this instrument or any amendments thereto, or as to any subsequent transfers hereto by the terms of the respected transfer, the Trust Estate, upon the death of Trustor . . ., shall be divided into three (3) shares. Trust A shall be *Lois Denise Waits Trust,* Trust B shall be *Tiffany Lynn Waits* and *Barry Brian Waits Trust* and Trust C shall be *Nancy Keil Waits* and *Tiffany Lynn Waits* and *Barry Brian Waits Trust.* Each of the Trusts shall be funded from the proceeds received from those certain insurance policies . . . *in such amounts as may be directed by the co-trustee, Lois Denise Waits, and her decision, in the allocation of funds to the three (3) Trusts, shall be in her sole discretion and final.* Provided, however, the co-trustee, Lois Denise Waits, should, as far as practicable, fund Trust C to satisfy Trustor's support obligations for his children.

(Italics ours.)

██ ██ Nancy first contends Denise, as a beneficiary, acted under a conflict of interest, which defeated her authority to allocate trust funds in her sole discretion, citing *Tucker v. Brown,* 20 Wn.2d 740, 150 P.2d 604 (1944). If there are several beneficiaries to a trust, one of the beneficiaries may be the sole trustee or one of several trustees. Restatement (Second) of Trusts § 99 (1959); *Montague v. Montague,* 510 P.2d 901, 903 (Colo. Ct. App. 1973). A trustee may be removed and a successor appointed for reasonable cause, RCW 11.98.039, which may include conflict of interest between the trustee beneficiary and the other trust beneficiaries. *Porter v. Porter,* 107 Wn.2d 43, 55, 726 P.2d 459, 68 A.L.R.4th 859 (1986) (citing *Tucker,* at 769). "It is the duty of a trustee to administer the trust in the interest of the beneficiaries." *Tucker,* at 768. In *Porter,* the court concluded because the trustee asserted a community property interest in the cash value policies which were intended to fund the trust, that alone established a sufficient conflict of interest between the trustee and the beneficiary to support removal for failing in her duty to administer the trust in the beneficiary's best interest. *Porter,* at 55–56. Here, Mr. Waits' estate tax return did claim a community interest in the insurance proceeds, even though the trust agreement

disclaimed such an interest. Additionally, bad will generated by litigation is sufficient cause for removal of a trustee. *Fred Hutchinson Cancer Research Ctr. v. Holman,* 107 Wn.2d 693, 716, 732 P.2d 974 (1987). In this case, there has been ongoing litigation between the parties since 1985.

Additional facts suggest a genuine issue of material fact exists with respect to a conflict of interest between Denise and the children. She has failed to fund Trust C, maintaining that obligation was satisfied when she paid the $60,000 creditor's claim against the estate directly to Nancy. However, one of the purposes of the trust was to protect those support payments from Nancy's direct control; thus, Mr. Waits' intent has been circumvented by the direct allocation of money to Nancy. Denise has paid in full the mortgage on her home with trust assets, in contravention of the first paragraph of Schedule B. No allocation of funds was made to Trust B until injunctive relief was pending, at which time Denise did fund it with $65,000. However, in view of other trust provisions, a material question of fact exists as to the adequacy of that amount. Thus, viewing the evidence in a light most favorable to Nancy, a material question of fact exists whether there is a conflict of interest between Denise and the children's interest, which would require her removal as trustee.

The trial court also concluded the document was unambiguous and therefore, extrinsic evidence regarding Mr. Waits' intent was inadmissible. The trial court stated the issue between the parties was the amount which should have been used to fund Trusts B and C and because the trust document did not specify any parameters, Denise had full discretion to fund or not fund, as she saw fit. We disagree and conclude the terms of the trust express a certain ambiguity which creates an additional material question of fact to be resolved at trial.

The intent and purpose of the settlor must be derived from the terms of the instrument, construing all of its provisions together. *Old Nat'l Bank v. Campbell,* 1 Wn. App. 773, 777, 463 P.2d 656, *review denied,* 78 Wn.2d 992

(1970). A trust is ambiguous if it is susceptible of more than one meaning; ambiguity is a question of law. *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 415–16, 722 P.2d 861 (1986). A provision of Trust B notes that any amount under $25,000 remaining after the children reached age 25 should be given to them directly.[3] The stated purpose of Trust B was to provide a college education and a nest egg for each child. There is an indication in the document itself that Mr. Waits contemplated a significant amount of money would be placed in Trust B. As noted in *Monroe v. Winn*, 16 Wn.2d 497, 508, 133 P.2d 952 (1943):

> When a trustee is chosen by a testator in his will, he has such powers as are conferred upon him by the terms of the trust and such powers as are necessary or appropriate to carry out the purpose of the trust and are not forbidden, it being assumed that the testator intended to grant to the trustee the authority to act in such a manner as the testator knew or anticipated would be necessary or appropriate *to carry out the terms of the trust.*

(Italics ours.) It is undisputed Mr. Waits' intent was to fund three duckling trusts with the assets of the umbrella trust. However, only Trust A and Trust B were funded. There is an allegation in Mr. Sisti's affidavit that Denise admitted to him the duckling trusts were to be funded equally. Here, there is a material question of fact whether Denise failed to carry out the terms of the trust and the intent of Mr. Waits by funding Trust B with only $65,000, by failing to fund Trust C, and by paying the mortgage on her home in full.

There also is a material issue of fact on Denise's abuse of discretion. A trustee's discretion is not unbridled,

---

[3]Trust B provides in part:

"b. *Optional distribution to living children*

"If, at any time, any living child's share then remaining is found by the Trustee to be under Twenty–Five Thousand Dollars ($25,000) such share then remaining may, in the Trustee's discretion, be distributed at any time, either in whole or in part, to such living child, provided that he has then attained twenty–five (25) years of age."

but "is . . . subject to control by the court, . . . to prevent an abuse by the trustee of his discretion." Restatement (Second) of Trusts § 187 (1959); *Templeton v. Peoples Nat'l Bank,* 106 Wn.2d 304, 309, 722 P.2d 63 (1986). The comments to the Restatement are instructive:

> *d. Factors in determining whether there is an abuse of discretion.* In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non–existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

Comment *d.* The courts will also exercise control if the trustee fails to use his judgment, acts beyond the bounds of reasonable judgment (comment *e*), has been dishonest (comment *f*), or acts with improper motive (comment *g*). The courts may also review the reasonableness of the exercise of the trustee's discretion:

> [I]f the trustee is empowered to apply so much of the trust property as he may deem necessary for the support of the beneficiary and *the trustee does not apply at least the minimum amount which could reasonably be considered necessary for the beneficiary's support,* the court will compel the trustee to pay the beneficiary at least that minimum amount.

(Italics ours.) Comment *i.* The extent of discretion depends upon the intent of the settlor so as to effectuate the purposes of the trust (comment *j*).

The intent and purpose of the settlor must be derived from the four corners of the trust document. *Templeton v. Peoples Nat'l Bank, supra* at 309. The trustee owes to the beneficiaries the highest degree of good faith, loyalty, care and integrity. *Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 403, 663 P.2d 104 (1983) (citing *Esmieu v. Schrag,* 88 Wn.2d 490, 498, 563 P.2d 203 (1977)). Part of that duty is to inform the beneficiaries periodically of the status of the trust, its property and how it is being managed. *Allard,* at

404. Additionally, if a nonroutine transaction which sufficiently affects the trust estate and the interests of the beneficiaries is contemplated by the trustee, the beneficiaries must be informed prior to the transaction. *Allard,* at 404–05. The statute also requires notice to and consent of the beneficiaries for a nonjudicial transfer of trust assets or administration. RCW 11.98.051. Another material question of fact exists whether Denise, by transferring the administration of all of the trusts to Vancouver and removing essentially all the assets of the umbrella trust, has breached her fiduciary duty and defeated the purpose of the trusts.

■ The next issue is whether the court erred in dismissing Rainier Bank. RCW 11.98.016 states:

> (3) An individual trustee, with a co–trustee's consent, may, by a signed, written instrument, delegate any power, duty, or authority as trustee to that co–trustee. . . . However, if a power, duty, or authority is expressly conferred upon only one trustee, it shall not be delegated to a co–trustee. If that power, duty, or authority is expressly excluded from exercise by a trustee, it shall not be delegated to the excluded trustee.
>
> . . . .
> *Nothing in this section, however, otherwise excuses a co–trustee from liability for failure to participate in the administration of the trust and nothing in this section, including subsection (3) of this section, excuses a co–trustee from liability for the failure to attempt to prevent a breach of trust.*

(Italics ours.) Having determined material questions of fact exist regarding whether Denise's actions constituted a breach of fiduciary duty, corollary questions of fact exist whether Rainier, as cotrustee, met its statutory duty to prevent the breach. Those questions of fact are raised by Mr. Sisti's affidavit which stated he felt Mr. Raekes had a conflict of interest, presumably between the interests of Denise and the estate, and that Denise's actions may have resulted in liability for the bank. A question also exists regarding the bank's statutory duty to give notice of a nonroutine transaction or of a nonjudicial move of the administration of the trusts to Vancouver. Thus, we conclude it was error to dismiss Rainier on summary judgment.

■ Finally, we address whether the court erred in dismissing Nancy's claim against Denise's husband, David Hamlin. No counteraffidavit has been submitted by Mr. Hamlin regarding Nancy's assertion he benefited from the assets of the umbrella trust.[4] *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). Thus, there was no basis on which the trial court could decide the issue. We conclude dismissal of Mr. Hamlin without basis was error.

Appellants' counsel has filed an affidavit requesting attorney fees authorized by RCW 11.96.140. That request is denied as counsel has failed to request those fees in his brief and has not submitted detailed time sheets or an affidavit describing the time spent in prosecution of this appeal. *Kreidler v. Eikenberry*, 111 Wn.2d 828, 841, 766 P.2d 438 (1989).

The orders on summary judgment are reversed and the cause is remanded for further proceedings and trial.[5]

THOMPSON, C.J., and GREEN, J., concur.

Review denied at 113 Wn.2d 1025 (1989).

---

[4]The umbrella trust received approximately $530,000 in life insurance proceeds. Of that amount, $60,000 was paid in June 1985 to Nancy (in lieu of Trust C), $65,000 was allocated to Trust B in 1987, and $32,000 was distributed directly to Mr. Waits' relatives. On the record before us, this leaves $373,000 over which Denise had full discretionary authority, including potential use of the funds for the benefit of David Hamlin.

[5]Rainier's motion to dismiss because the summary judgment order did not comply with RAP 9.12 is denied. The facts noted in this opinion are taken from that portion of the record which all counsel stipulated was before the trial court.