# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Matter of the Estate of<br><br>EARL M. HOLMES | No. 78922-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 4, 2019 |

ANDRUS, J. — Earl Holmes executed a will that explicitly disinherited his relatives but failed to identity to whom he wished to bequeath his property. Dexter and Joanie Self, Holmes's friends and the personal representatives of his estate, contend Holmes intended to bequeath his entire estate to them. Individuals claiming to be Holmes's distant relatives argue that they should take by way of the laws of intestacy. Finding Holmes's will ambiguous, the trial court relied on the content of a letter purportedly written by the attorney who drafted the will to find that Holmes intended the Selfs to be the sole beneficiaries of his estate. The relatives challenge the trial court's jurisdiction as well as its reliance on this extrinsic evidence to supply a missing term in Holmes's will.

We conclude that (1) the trial court had subject matter jurisdiction over the will dispute between the Selfs and Holmes's relatives; (2) notice to the department of revenue was not statutorily required because it had not been established that Holmes died without being survived by any person entitled to his estate; (3) the trial court erred in deeming the will ambiguous; (4) RCW 11.96A.125 provides the

trial court with the authority to reform a will in the case of a mistake of fact or law; (5) the trial court erred in concluding that the attorney's letter, without more, is admissible to establish the intent of the testator; and (6) remand is necessary for the trial court to determine if there is sufficient admissible evidence to warrant reformation of the will under RCW 11.96A.125.

## FACTS

Earl Holmes executed his will on September 24, 2012. Article II provides:

### IDENTIFICATION OF FAMILY

I have no immediate family now living and have no deceased children.

Except as hereinafter provided, I make no bequest or devise to any person nor for the descendants of any persons who may survive me.

Despite the "except as hereinafter provided" language, there was no subsequent provision making a bequest to anyone. Holmes nominated his friends, Dexter and Joanie Self, as co-personal representatives of his estate.[1] Holmes signed the will in the presence of two witnesses, including William Allen, whom the Selfs contend drafted the will.

Holmes died on December 9, 2015, just over three years after executing the will. A week later, the Selfs submitted Holmes's will to probate. In February 2017, several individuals claiming to be related to Holmes (Relatives) appeared and requested notification of certain probate matters under RCW 11.28.240.

In January 2018, in response to a motion filed by the Relatives, the Selfs filed a status report as to their administration of Holmes's estate. They attached a

---

[1] According to the representations of their attorney at a January 2018 hearing, the Selfs were also the decedent's neighbors who took care of him "for a long time."

letter purportedly sent to Holmes by Allen (the Allen Letter). The Selfs' attorney represented that his clients found the letter while sorting through the decedent's property. They contended that the envelope in which the Allen Letter arrived was postmarked a week before Holmes executed the will.[2] The Allen Letter referenced an enclosed draft of the will and stated, in relevant part:

> Let me know if there are any mistakes in the will or if you have some changes. Do you have anyone as an alternate to inherit from you if Dexter and Joanie happen to die before you do?
>
> If you do have an alternate, we can put that in the will now. If not, you could change your will in the future if you do want to add someone else or make any other change.

The Selfs alleged that they found a copy of the will, bearing a header designating it as a draft, with the letter. The draft appears to be identical to the will Holmes later executed.

The Selfs filed a subsequent motion for declaratory judgment, seeking an order declaring them to be the sole beneficiaries of the Holmes Estate. The Selfs argued that because Holmes's will was ambiguous, the court could consider the Allen Letter as extrinsic evidence of Holmes's intent. The Selfs maintained that when the will was read together with the Allen Letter, it was clear that they were the sole intended beneficiaries under the will.

The Relatives opposed the motion, arguing that in light of the will provision disinheriting any descendants, RCW 11.08.170 required the Selfs to notify the department of revenue that Holmes's property might escheat to the state and that

---

[2] The last two digits of the year are obscured on the postmark.

this notice was jurisdictional.[3] They also contended that, based on documentation of their familial relationship with Holmes, the court should declare that Holmes died intestate and that the Relatives were presumptive beneficiaries under the intestacy statute, RCW 11.04.015. The Relatives argued that the court could not consider the Allen Letter as evidence of Holmes's intent because the will was not ambiguous, Finally, they argued the Allen Letter was inadmissible because it was unauthenticated.

The court deemed the will ambiguous, considered the Allen Letter in resolving the question of Holmes's intent, and entered an order declaring the Selfs to be the "sole beneficiaries" of Holmes's estate. The court did not rule on the Relatives' jurisdictional challenge under RCW 11.08.170. The Relatives appeal.

## ANALYSIS

### A. Subject Matter Jurisdiction and RCW 11.08.170

The Relatives first contend the trial court lacked subject matter jurisdiction under RCW 11.08.170 to consider the Selfs' motion for declaratory relief. Whether a court has subject matter jurisdiction is a question of law reviewed de novo. ZDI Gaming Inc. v. State ex rel. Wash. State Gambling Comm'n, 173 Wn.2d 608, 624, 268 P.3d 929, 937 (2012). The term "subject matter jurisdiction" refers to the power of a court to hear a case. Id. The subject matter jurisdiction of the superior courts comes from either the Washington Constitution or the state legislature. WASH. CONST. art. IV, § 6 (establishing jurisdiction of superior courts and authorizing jurisdiction "as may be prescribed by law"). Id. at 624-25.

---

[3] The Relatives also argued that the court should treat the Selfs' motion as a time-barred petition to contest the will under RCW 11.24.010. They have abandoned this argument on appeal.

RCW 11.08.140 provides that whenever a person dies leaving property in the state without being survived by any person entitled to the property, the property "shall be designated escheat property." Under RCW 11.08.160, the department of revenue has jurisdiction over escheat property and may institute any proceeding necessary to handle the property. RCW 11.08.170 provides:

> Escheat property may be probated under the provisions of the probate laws of this state. Whenever such probate proceedings are instituted . . . the petitioner shall promptly notify the department of revenue in writing thereof . . . Thereafter, the department of revenue shall be served with written notice at least twenty days prior to any hearing on proceedings involving the valuation or sale of property, on any petition for the allowance of fees, and on all interim reports, final accounts or petitions for the determination of heirship. . . . **Failure to furnish such notice shall be deemed jurisdictional and any order of the court entered without such notice shall be void.** (Emphasis added).

The Relatives argue that because Holmes died intestate, they are entitled to inherit his estate and the trial court lacked subject matter jurisdiction to deny their claim of heirship under this statute because the Selfs failed to notify the department of revenue of their motion for declaratory relief.

This argument fails for the simple reason that Holmes did not die intestate. The Relatives could be deemed heirs under the laws of intestacy only if Holmes's will were declared invalid. See In re Estate of Becker, 177 Wn.2d 242, 247, 298 P.3d 720 (2013) (if will is invalid, estate will be distributed either pursuant to laws of intestacy or pursuant to prior will). The escheat property statute would be triggered and require notice to the department of revenue only upon a declaration of the will's invalidity. Because neither the Selfs nor the Relatives sought a

5

declaration of the will's invalidity within four months of it being admitted into probate as required by RCW 11.24.010, RCW 11.08.170 does not apply.

The Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, provides for judicial resolution of estate disputes. RCW 11.96A.010. Under RCW 11.96A.040, superior courts have original subject matter jurisdiction over the probate of wills and the administration of estates of deceased individuals. This statute clearly confers subject matter jurisdiction to a trial court to resolve the Selfs' motion for declaratory judgment. The Relatives' subject matter jurisdiction challenge fails.

## B. Interpretation or Reformation of Holmes's Will

The Relatives next argue that the trial court erred in "rewriting" Holmes's will and basing its decision on an unauthenticated letter. We conclude that the trial court erred in concluding that Holmes's will was ambiguous and that the Allen Letter was admissible without testimony as to its authenticity. However, we also conclude that the trial court has the statutory authority under RCW 11.96A.125 to reform Holmes's will if sufficient admissible evidence were provided to demonstrate the testator's intent by clear, cogent, and convincing evidence.

The interpretation of a will, including the determination of whether a will contains an ambiguity, is a question of law subject to de novo review. In re Estate of Bernard, 182 Wn. App. 692, 704, 332 P.3d 480 (2014). We construe a will to give effect to the testator's intent as of the time of the will's execution. In re Estate of Bergau, 103 Wn.2d 431, 435-36, 693 P.2d 703 (1985). The court must ascertain the testator's intent from the four corners of the will. Bergau, 103 Wn.2d at 435; In

re Estate of Price, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994). Under the established common law rule, extrinsic evidence is admissible to explain the language in the will only if there is ambiguity as to the testator's intent. Bergau, 103 Wn.2d at 436-37; In re Estate of Sherry, 158 Wn. App. 69, 82, 240 P.3d 1182 (2010). The terms of a testamentary document are ambiguous if the language is susceptible to more than one reasonable interpretation. Waits v. Hamlin, 55 Wn. App. 193, 200, 776 P.2d 1003 (1989). And while a court may consider extrinsic evidence to resolve an ambiguity regarding the settlor's intent, it may not consider such evidence to import an intention into the instrument that is not expressed therein. See In re Estate of Curry, 98 Wn. App. 107, 113, 988 P.2d 505 (1999).

The trial court erred in concluding that Holmes's will is ambiguous. As it acknowledged, "there is a pretty glaring omission" in the will because Holmes did not indicate to whom his estate was bequeathed. An omitted provision is not the same as an ambiguous one. As the will is currently written, the language is not susceptible to two different interpretations.

But failing to provide the identity of a beneficiary in a will does not necessarily render the will invalid. RCW 11.96A.125 allows a court to reform even an unambiguous will in certain situations:

> The terms of a will or trust, even if unambiguous, may be reformed by judicial proceedings under this chapter to conform the terms to the intention of the testator or trustor if it is proved by clear, cogent, and convincing evidence that both the intent of the testator or trustor and the terms of the will or trust were affected by a mistake of fact or law, whether in expression or inducement. This does not limit the ability to reform the will or trust using the binding nonjudicial procedures of RCW 11.96A.220.

The Selfs presented the Allen Letter to support their claim that Holmes intended to bequeath his estate to them. But the Allen Letter, submitted without any testimony as to its origin, was not properly authenticated under ER 901. Ordinarily, we review evidentiary rulings for an abuse of discretion. Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 728, 315 P.3d 1143 (2013). Because the trial court was asked to rule as a matter of law and did not conduct an evidentiary hearing, the procedure here was analogous to summary judgment proceedings and the appropriate standards of review are those applicable to summary judgments. See Brinkerhoff v. Campbell, 99 Wn. App. 692, 994 P.2d 911 (2000) (applying summary judgment review standards to trial court's ruling enforcing settlement agreement). In conjunction with a summary judgment motion, we review a trial court's evidentiary rulings de novo. Parks v. Fink, 173 Wn. App. 366, 375, 293 P.3d 1275 (2013). Whether we apply the abuse of discretion or de novo standard of review, our conclusion is the same—the Allen Letter, in its current form, is inadmissible because it was not properly authenticated.

Authentication is a threshold requirement designed to assure that evidence is what it purports to be. In re Det. of H.N., 188 Wn. App. 744, 751, 355 P.3d 294 (2015). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). The proponent of evidence "must make only a prima facie showing of authenticity for purposes of establishing admissibility" and can meet this burden by showing

"'enough proof for a reasonable fact finder to find in favor of authenticity.'" H.N., 188 Wn. App. at 751 (quoting State v. Payne, 117 Wn. App. 99, 108, 69 P.3d 889 (2003)).

ER 901(b) provides illustrative examples of how to establish the authenticity of a document:

> (1) *Testimony of Witness with Knowledge.* Testimony that a matter is what it is claimed to be.
>
> (2) *Nonexpert Opinion on Handwriting.* Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
>
> …
>
> (4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

ER 901(b). In this case, neither of the Selfs testified how, when or where they located the Allen Letter or why they concluded that Holmes received the letter from Allen just days before he executed his will. There was no testimony from any person who might have personal knowledge of the letter, Allen's purported legal work for Holmes, Allen's letterhead or signature, or even Allen's status as an attorney in Washington on the date the letter was mailed to Holmes.

The trial court appeared to conclude that the Allen Letter was adequately authenticated based on the circumstances surrounding the execution of the will:

> But there is strong evidence that Mr. Allen was the attorney on this case. He was one of the witnesses to the will, which was signed – which was entered – well, it was signed just a week after this letter, so it's clear to me that there was – that they were in the process of finalizing the will and getting things in order for it to be signed.
>
> So I do find that there is reliability of this – of this document such that it's appropriately used for extrinsic evidence.

9

Certainly, authenticity may be shown by circumstantial evidence. Payne, 117 Wn. App. at 109. But no witness established, through sworn testimony, that Allen was a practicing attorney and there is nothing on the face of the letter or the will that establishes this fact. The Selfs simply attached the letter and envelope to their motion, without any accompanying declaration or affidavit identifying the author or his role in the will drafting process.

At the hearing, the Selfs cited ER 904 as a basis to admit the letter. But ER 904 is designed to expedite the admission of documentary evidence at trial. Miller v. Arctic Alaska Fisheries Corp., 133 Wn.2d 250, 258, 944 P.2d 1005 (1997). The rule gives a trial court discretion to deem certain documents authentic if the party opposing the document's admission fails to object in accordance with the timing provisions of the rule. ER 904(a), (c). ER 904 does not require the trial court to admit documents offered under that rule; rather it allows the court to exercise its traditional discretion to address a party's evidentiary objection. Miller, 133 Wn.2d at 259. Because the Relatives objected to the Allen Letter's authenticity, ER 904 does not provide an independent basis for overcoming the requirements of ER 901.

Because the Selfs offered no testimony or other evidence to authenticate the Allen Letter or the envelope in which it was purportedly mailed under ER 901(b), the letter was inadmissible and the trial court erred by relying upon it.[4]

---

[4] The Relatives also contest on appeal that the Allen Letter constitutes inadmissible hearsay. Because this evidentiary objection was not raised below, we refuse to consider it on appeal. See RAP 2.5(a) (appellate courts will generally refuse to consider a claim of error raised for the first time on appeal)

We reverse the declaratory judgment because the trial court did not apply the correct standard in evaluating Holmes's will and erred in considering the Allen Letter without additional testimony to authenticate it. We reject the Relatives' request to declare that Holmes died intestate because RCW 11.96A.125 may allow the trial court to reform the will to reflect Holmes's intent. We therefore remand for further proceedings consistent with this opinion.

Andrus, J.

WE CONCUR:

Chen, J.