IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LANZCE DOUGLASS, residual beneficiary of the Harlan D. Douglass Trust, | ) ) ) ) | No. 39209-1-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| HARLEY C. DOUGLASS, Co-Trustee and residual beneficiary of the Harlan D. Douglass Trust, | ) ) ) ) | |
| Respondent. | ) ) | UNPUBLISHED OPINION |
| STACEY M. DOUGLASS BOIES, Co-Trustee and residual beneficiary of the Harlan D. Douglass Trust; THOMAS HAMILTON, Special Trustee of the Harlan D. Douglass Trust; and HARLAN D. DOUGLASS, beneficiary of the Harlan D. Douglass Trust, | ) ) ) ) ) ) ) ) | |
| Additional Necessary Parties. | ) | |

PENNELL, J. — Lanzce Douglass is a residual beneficiary of the Harlan D.

Douglass Trust, which was created by his late mother's will for the primary benefit

No. 39209-1-III
*Douglass v. Douglass*

of Lanzce's[1] father. The co-trustees of the Trust are Lanzce's siblings, Harley Douglass

and Stacey Douglass Boies, who are also residual beneficiaries. Lanzce appeals from

the superior court's denial of his petition to remove Harley as co-trustee. We affirm.

FACTS

Maxine and Harlan Douglass had three children: Harley Douglass, Stacey

Douglass Boies, and Lanzce Douglass. In 2008, Maxine executed a will bequeathing

the bulk of her estate—including her community interest share of the Douglasses' vast

real estate holdings—to the Harlan D. Douglass Trust (the Trust).

Maxine died in 2016, leaving Harlan as her surviving spouse. Pursuant to the terms

of the will, the residue of Maxine's estate poured over into the Trust for the benefit of

Harlan. Harlan was entitled to regular distributions of the income earned by Trust-owned

properties. He also had "the right, in his absolute discretion," to withdraw up to five

percent of the Trust's fair market value annually. Clerk's Papers (CP) at 381-82.

Maxine's will named Harlan as trustee, but provided that if Harlan became "unable

or unwilling" to serve, Harley and Stacey would become co-trustees. *Id.* at 389. The will

also named Thomas Hamilton as "Special Trustee," giving him "unfettered discretion"

---

[1] For purposes of clarity and readability, we refer to the members of the Douglass family by their first names.

2

to make "one or more distributions" to Harlan "at any time."[2] *Id*. at 389-90. In February 2020, Harley and Stacey began serving as co-trustees.[3]

Maxine's will specified the balance of the Trust would be distributed five years after Harlan's death as follows: Harley is to receive 50 percent of the Trust's value, Stacey will receive 40 percent, and Lanzce will receive the remaining 10 percent.

In July 2020, Lanzce filed a petition in superior court to remove Harley as co-trustee. Lanzce filed an amended petition in April of the following year. In his petitions, Lanzce accused Harley of various violations of his fiduciary duty, including:

- filing suit in 2019 to remove Thomas Hamilton as special trustee and to enjoin Mr. Hamilton's attempted distribution of all Trust-owned real property to Harlan.[4]

- failing to obtain the approval of Stacey, his co-trustee, before amending the petition in the 2019 special trustee removal action to continue the suit in his capacity as co-trustee, effectively making the Trust a party to the suit.

_____

[2] Mr. Hamilton evidently no longer serves as Special Trustee.
[3] The parties to this appeal apparently do not dispute that Harlan became unable to serve, necessitating Harley and Stacey's appointment as co-trustees.
[4] Harley was not yet serving as co-trustee when he initiated the 2019 special trustee removal action, but he maintained the suit after his appointment as co-trustee, and later amended his petition to pursue it in his capacity as co-trustee.

- representing in contracts that the Trust owns real property while contradictorily arguing before the superior court that the Trust was unfunded.

- hiring attorneys to collect rent amounts from Harlan that were not actually owing on leases entered into prior to the formation of the Trust.

- having no intention to repay millions of dollars Harlan had loaned, prior to the formation of the trust, to Harley for his business, Crushed Rock Sales, LLC.

- selling land to Harlan and Maxine in 2008, failing to record any deed for the sale, and then transferring the property back to himself years later without returning any of the purchase price.

- attempting to abdicate his role as co-trustee by suggesting he and Stacey resign and appoint Harley and Lanzce's daughters to serve as co-trustees.

- refusing in 2020 to make the annual distribution to Harlan of five percent of the Trust's fair market value, as guaranteed by Maxine's will.

- making comments that Lanzce found unsavory: cursing at Stacey; suggesting to a company that managed Trust-owned properties that they should set rent amounts based on tenants' apparent wealth; using coarse language with stockbrokers in a Trust-related meeting; inquiring if he could personally receive an illegal kickback from a towing company that towed vehicles from Trust-owned properties; and

4

suggesting that reimbursements from the city and county for double-paid utility bills on Trust-owned properties would be pocketed personally by Harley.

Harley disagreed with Lanzce's allegations and submitted numerous declarations and exhibits in opposition to the petition. Harley's responses are summarized as follows:

- Contrary to Lanzce's accusation that he was disloyal for initiating the 2019 special trustee removal suit, Harley described it as a "lawsuit to stop Lanzce's raid" of the Trust and argued his actions were "both necessary and commendable." *Id.* at 452. Harley characterized Lanzce's petition to remove him as co-trustee as retaliatory, contending Lanzce sought revenge because Harley had thwarted Lanzce's scheme to circumvent Maxine's wishes and increase Lanzce's own inheritance.

- In rebutting Lanzce's allegation that Stacey had not approved Harley's desire to effectively make the Trust a party to the 2019 action, Harley noted that he had complied with RCW 11.98.016(4), which requires written notice to any co-trustee, and that neither Stacey nor her counsel had timely objected.

- Regarding Lanzce's contention that Harley had exhibited a lack of candor by telling the superior court that the Trust was unfunded, Harley explained that, as to Trust-owned properties, "title issues" needed to be "cleared up" because there was a lack of deeds "vest[ing] title in the Trust." *Id.* at 452. Nevertheless, Harley

5

explained, "[a]t the same time, the business of the [T]rust has to continue pending quieting of title." *Id.* "Harley and Stacey, as well as Harlan before them, on advice of counsel, operated the Trust *as if* it had been funded." *Id.* (emphasis added). Harley noted that his treatment of properties as Trust-owned—even where title had not yet been quieted—had not resulted in any deleterious consequence to the Trust.

- Responding to Lanzce's accusation that he hired counsel to collect past due rent from Harlan, Harley explained that he entered into four ground leases with his parents years prior to Maxine's death, in which Harley was designated the lessor of land that his parents had gifted him. Harley's collection of rent had been lax, but a family attorney had since advised that, for Harlan to receive the intended tax-saving benefits of this arrangement, the terms of the lease would have to be adhered to. In briefing to the superior court, counsel argued, "There is nothing Harley can do to change the terms of the leases. He is only entitled to the rent stated in the leases regardless of who holds the leasehold interest. . . . [T]hat he is co-trustee is irrelevant and there is no evidence or even any allegation that he used his position as co-trustee to gain any unfair advantage." *Id.* at 453. Harley also posited that Lanzce's claim that the rent amounts collected were not actually due was false. Harley noted that Deanna Malcom, Harlan's attorney-in-fact, had

6

"agreed that . . . unpaid rent had accrued" and "resolved the issue" amicably with Harley by paying the past due amounts. *Id.* at 453-54; *see id.* at 622-37.

- With regard to the issue of unpaid loans, Harley countered: "Lanzce's claim that Harley owes money to his parents is false." *Id.* at 454. He noted Lanzce had not pointed to any promissory notes, nor any letters from Harlan or Maxine seeking repayment. Ron Jackson, Harlan's bookkeeper, had testified in a deposition that the sums Lanzce pointed to were investments in one of Harley's businesses, not loans. Ms. Malcom, Harlan's attorney-in-fact, also testified that she did not understand Harlan to have any expectation of repayment of these monies given to Harley.

- Rebutting Lanzce's accusation that Harley deeded land to his parents in 2008, then failed to return the purchase price when he subsequently transferred the land back to himself, Harley noted that "[t]he conveyance of land" had been "contemplated" but "failed to materialize." *Id.* at 455; *see id.* at 583, 589. Harley pointed out that if Harlan had been swindled as Lanzce alleges, Harlan was a savvy businessman and would have done something about it, but he did not do so. Harley added that "Lanzce has failed to provide any evidence that Harley received any purchase money from Harlan." *Id.* at 455-56.

- Harley corrected Lanzce's assertion that Harley had once tried to abdicate his role as co-trustee. Harley explained that, soon after Harley and Stacey learned they would become co-trustees, they held a meeting, with their respective counsel, where they discussed how the Trust's day-to-day operations would be managed. One possibility, which was discussed but not adopted, was that Harley and Lanzce's eldest daughters would be hired to oversee the Trust's daily *management*; it was *never* proposed that Harley would stop serving as co-trustee.

- Harley agreed with Lanzce that Harlan has an absolute right to an annual distribution of five percent of the Trust's fair market value. However, in 2020, Harlan requested that this withdrawal come in the form of two specific real property assets he wished to be conveyed to him. While Maxine's will certainly gave Harlan the right to an annual withdrawal, that right did not include disbursement of specific properties. Further, Harley pointed out the Trust had not yet been valued, and the properties Harlan requested had not been appraised since 2016, making it impossible to say whether the properties Harlan sought were five percent or less of the Trust's fair market value. Harley explained he was not outright refusing the 2020 property transfer to Harlan; the disbursement had merely been delayed. Harley also noted that through January 2022, 23 months into

Harley's tenure as co-trustee, the Trust had distributed nearly $19 million in rental income to Harlan.

- Harley did not deny that he once cursed at Stacey, but pointed out his sister had used similar language, and questioned how such language could logically constitute grounds for removal of a trustee. As to a supposed suggestion that rent amounts should be set based on a tenant's financial status, Harley explained that if he had made such a comment, it was a joke. As to the allegation he used coarse language with stockbrokers at a Trust-related meeting, Harley noted all three brokers had since been deposed, and none recalled being offended by anything Harley had said, and all stated they had positive working relationships with Harley. As to Lanzce's accusation that Harley sought an illegal kickback from a towing company, Harley did not recall making such a statement, but noted that Stacey had clarified in her deposition that Harley did not inquire about taking a kickback for himself *personally*, but for the Trust, and that at any rate, no kickback had ever been actually received. Finally, as to Lanzce's accusation that Harley stated he wanted to keep utility payment reimbursements, Harley noted Stacey admitted that she was "not sure" if Harley meant the reimbursements should be kept by him personally or by the Trust. *Id.* at 460.

9

In addition to an order denying Lanzce's petition, Harley sought attorney fees

pursuant to RCW 11.96A.150(1), arguing that the superior court should award fees

because Lanzce's petition was brought in bad faith.

As the primary beneficiary of the Trust, Harlan was joined as a necessary party

in the superior court proceedings. His attorney-in-fact, Deanna Malcom, filed a response

and a declaration opposing Lanzce's petition, in which she expressly stated on behalf of

Harlan that she did "not support Harley's removal" as co-trustee. *Id.* at 663. Ms. Malcom

explained she had "not observed any action by Harley that amounts to a breach of

fiduciary duty or loyalty to Harlan." *Id.* at 659. She conceded that Lanzce and Harley had

separately "used an unwitting Harlan as both sword and shield in litigation," but

contended that "leaving Stacey as the sole trustee" would "cause . . . more harm to the

Trust" and "endanger[] Harlan's interests." *Id.* at 661. Ms. Malcom further explained that

she understood Harlan's receipt of his five percent annual withdrawal during 2020 was

being delayed, not denied, consistent with Harley's representation. Ms. Malcom explained

that, "while my interactions with Harley have not been free of tension . . . I have not

observed it negatively interfering with the way in which Harley manages the Trust."

*Id.* at 666.

The superior court held a hearing on the petition and entertained oral argument of counsel. After taking the matter under advisement, the court denied Lanzce's petition to remove Harley as co-trustee. The court explained its decision in a letter ruling.

The court started its written ruling by observing it was "noteworthy" that Deanna Malcom—the attorney-in-fact for the Trust's primary beneficiary, Harlan, who Lanzce claimed Harley had repeatedly betrayed—objected to Harley's removal. *Id.* at 763.

The court proceeded to summarize Lanzce's steep burden to "demonstrat[e] that Harley's removal is 'clearly necessary to save trust property.'" *Id.* (quoting *In re Est. of Ehlers*, 80 Wn. App. 751, 761, 911 P.2d 1017 (1996)). The court also observed that "long-standing authority" requires that trustees be removed "sparingly." *Id.* The court reasoned Lanzce had not met his burden.

"Clearly," the court reasoned, "the opposing factions have different viewpoints as to the litigation Harley initiated"—that is, the 2019 suit.[5] *Id.* But, the court held, "Harley has not intentionally misled, committed malfeasance or harmed the Trust. Conversely, his actions, which were on the advice of counsel, intended to benefit the Trust and its beneficiaries." *Id.* at 764. The court further reasoned that, in filing the 2019 special trustee removal action, Harley "sought to *protect* Trust property," rather than to harm it.

---

[5] The 2019 action was ongoing when the instant matter was resolved.

11

*Id.* at 764-65 (emphasis added). Further, the court noted "both co-trustees—as well as Harlan before replaced—acted as if the Trust had been funded" on the advice of their counsel, notwithstanding that "title issues" that still needed to be "resolve[d]." *Id.* at 764. The court reasoned that trustees are entitled to rely on the recommendations of other professionals, including legal counsel, so long as they use reasonable care in selecting them. And Lanzce had made no allegation that Harley used less-than-reasonable care in selecting his attorneys.

"Equally clearly," the court went on, "the opposing factions do not like each other. However, even a bad relationship among a trustee and beneficiaries is not dispositive." *Id.* "Friction between a trustee and a beneficiary that does not interfere with the proper administration of the Trust is not a sufficient ground to remove the trustee." *Id.*

The court also rejected Lanzce's citation to supposed conflicts of interest posed by Harley's pre-Trust business dealings with Harlan and Maxine. "The evidence did not show that Harley used his position as co-trustee for improper dealings or that he used his position to take advantage of Harlan, Maxine's Estate, or the Trust." *Id.* at 765. "As it relates to the rent collection allegation, the lease terms are what they are; Harley cannot change the terms." *Id.* The court noted that Harley acted on the advice of his counsel

in seeking payment of rent amounts from Harlan; that contrary to Lanzce's assertion, Ms. Malcom agreed that rent had been owing; and that the lease agreements had nothing to do with the Trust.

As to the allegation that Harley refused Harlan's request for his annual five percent withdrawal during 2020, the court noted that "Maxine's will . . . does not afford the right to specify assets. . . . Harley had the discretion to select any part of the Trust estate to satisfy a distribution," rather than acquiescing to Harlan's request for two specific properties. *Id.* The court held that "Harlan's right to receive his distribution was delayed" while the Trust's value was calculated, "not extinguished." *Id.* Finally, the court concluded that Lanzce's allegations that Harley suggested rent should be set based on tenants' perceived wealth, and that Harley sought towing kickbacks and utility reimbursements, did not "support" a conclusion "that Harley harmed the Trust." *Id*. While denying Lanzce's petition, the court declined to award Harley attorney fees, concluding Lanzce's petition was not brought in bad faith.

Lanzce timely appealed the superior court's denial of his petition to remove Harley as co-trustee.

No. 39209-1-III
*Douglass v. Douglass*

ANALYSIS[6]

Upon petition of any beneficiary to a trust, the superior court may remove a trustee for "reasonable cause." RCW 11.98.039(4)(c); *see Ehlers*, 80 Wn. App. at 761. Reasonable cause might include a breach of the trustee's fiduciary duties,[7] a conflict of interest, or bad will generated by litigation. *See Bartlett v. Betlach*, 136 Wn. App. 8, 20, 146 P.3d 1235 (2006). The petitioner bears the burden to "demonstrate that removal is *clearly necessary* to save . . . trust property." *Ehlers*, 80 Wn. App. at 761 (emphasis added); *see also Bartlett*, 136 Wn. App. at 20.

---

[6] Lanzce has moved in this court to strike portions of Harley's briefing, which referenced aspects of Harley's 2019 special trustee removal lawsuit that were not before the superior court in this matter. We deny this motion in the interests of justice. *See* RAP 1.2(a). Both parties have included commentary about the merits of the 2019 action in their briefing to this court, in violation of appellate rules and restrictions set by our court's commissioner. The interests of justice would not be served by granting Lanzce's motion to strike, when his own opening brief provoked the offending statements in Harley's responsive brief.

[7] "[A] trustee is a fiduciary who owes the highest degree of good faith, diligence and undivided loyalty to the beneficiaries." *Ehlers*, 80 Wn. App. at 757; *see Stewart v. Baldwin*, 86 Wash. 63, 68, 149 P. 662 (1915) ("[A] trustee is bound to do that which will best serve the interests which for the time are intrusted to his care."); *Tucker v. Brown*, 20 Wn.2d 740, 768, 150 P.2d 604 (1944) (noting that, in administering a trust, "[t]he trustee must exclude from consideration . . . [their] own advantage" and "that of third parties"); *see also* RCW 11.98.078(1) ("A trustee must administer the trust solely in the interests of the beneficiaries."). A trust beneficiary may serve as trustee. *See Waits v. Hamlin*, 55 Wn. App. 193, 198, 776 P.2d 1003 (1989).

14

"A court has a 'wide latitude of discretion'" in ruling on a petition for a trustee's removal. *In re Est. of Cooper*, 81 Wn. App. 79, 94-95, 913 P.2d 393 (1996) (quoting *Schildberg v. Schildberg*, 461 N.W.2d 186, 191 (Iowa 1990)). We review a trial court's decision on a petition to remove a trustee for abuse of discretion. *See Ehlers*, 80 Wn. App. at 761. This is an "extremely deferential" standard. *Hoffman v. Kittitas County*, 4 Wn. App. 2d 489, 495, 422 P.3d 466 (2018). Reversal is not warranted simply because a trial court could have arrived at a different decision. Rather, reversal is limited to circumstances such as legal error, unsupported factual findings, or a decision that falls outside the range of legally acceptable choices. *See, e.g.*, *In re Dependency of Z.A.*, 29 Wn. App. 2d 167, 192, 540 P.3d 173 (2023).

The superior court here had tenable reasons for rejecting Lanzce's petition. Harley provided plausible explanations for each of Lanzce's accusations of misconduct. Harley explained he believed litigating the 2019 special trustee removal action was necessary to protect the Trust.[8] He relied on the advice of counsel in initiating that action and in

---

[8] A trustee may "[p]rosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties." RCW 11.98.070(37).

arguing the Trust was technically unfunded.[9] Harley produced evidence that, based on transactions occurring before Harley became trustee, Harlan incurred rent obligations to Harley and Harlan invested money in Harley's projects with no expectation of repayment.[10] Harley denied he ever finalized the purported 2008 sale of property to his parents and he explained he never attempted to abdicate his role as co-trustee; he simply floated the possibility of hiring his daughter and niece to manage the day-to-day operations of the Trust. Harley explained that he never denied his father a five percent withdrawal of the Trust's fair market value; the 2020 request was simply delayed in order to determine the value of trust properties. Harlan's attorney-in-fact agreed with this assessment. And while Harley did not deny sometimes using coarse or sarcastic language, he pointed out that his statements had no adverse impact upon the Trust.[11]

The superior court reviewed the parties' competing claims and ultimately concluded that "[t]he evidence did not show that Harley used his position as co-trustee

---

[9] "A trustee is entitled to rely on the recommendations of others hired to assist in the performance of the trustee's duties, as long as the trustee uses reasonable care in selecting such persons." *Ehlers*, 80 Wn. App. at 759; *see also* RCW 11.98.070(27).

[10] Transactions or contracts entered into by a trustee before becoming trustee are not voidable as a conflict of interest. *See* RCW 11.98.078(2)(e).

[11] As Lanzce notes in his briefing to this court, bad will toward a beneficiary or co-trustee *may* justify removal of a trustee. *See* RESTATEMENT (THIRD) OF TRUSTS § 37 cmt. e, at 144 (2003) (citing Waits, 55 Wn. App. 193). But the petitioner must still show "removal is clearly necessary to save the trust property." *Ehlers*, 80 Wn. App. at 761.

for improper dealings or that he used his position to take advantage of Harlan, Maxine's Estate, or the Trust." CP at 765. The court emphasized that Harlan, through his attorney-in-fact, objected to Harley's removal. And the court properly noted that Stacey, who supported Lanzce's petition, nevertheless admitted in a deposition that she had been able to amicably resolve her disagreements with Harley, that Harley's management had never unnecessarily cost the Trust any money or squandered any assets, and that the Trust benefitted from Harley's "skills and experience." *Id.* at 764; *see id.* at 502-03, 507-08.

Lanzce argues the superior court ignored evidence that Harley breached his fiduciary duties by misappropriating property he purportedly sold to their parents in 2008. But the record fails to show Harley breached his duties as co-trustee. While there is some evidence that Harley purported to sell property to his parents in 2008 and that he later appropriated it to himself, that evidence is contested. Although he has made inconsistent statements in the past, Harley now claims that he previously misremembered the deal, and that no sale was ever finalized because the quitclaim deeds cited by Lanzce were never delivered and Harlan never paid for the land. When the evidence is in conflict, we do not reweigh it on appeal. *See Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009) (noting an appellate court may not find evidence "compelling" when the trial court was unpersuaded by it).

Moreover, the purported property sale took place more than 11 years before Harley began serving as co-trustee. And Harley transferred the property in question to one of his own companies approximately one year prior to becoming co-trustee. Lanzce fails to cite any authority indicating that actions taken by Harley before becoming a trustee could constitute a breach of loyalty or fiduciary duty, let alone any authority stating that pre-Trust misconduct would *require* a trial court to exercise its discretion to remove a trustee.

The superior court here acted within its discretion to conclude that the disputed facts regarding the purported 2008 land sale failed to justify removing Harley as trustee.[12] As previously stated, Lanzce had the burden of showing that Harley's removal was "clearly necessary" to save trust property. *Ehlers*, 80 Wn. App. at 761. It was reasonable for the superior court to conclude that the ambiguous circumstances regarding the 2008 purported land sale were insufficient to justify removal of a co-trustee who had the support of Harlan, through his attorney-in-fact, and who had been deemed a competent manager by his co-trustee.

---

[12] The superior court failed to make specific findings regarding the purported 2008 land sale. In such circumstances, we must presume the party with the burden of proof— here, Lanzce—failed to sustain their burden. *In re Est. of Bussler*, 160 Wn. App. 449, 465, 247 P.3d 821 (2011).

No. 39209-1-III
*Douglass v. Douglass*

CONCLUSION

The order denying Lanzce Douglass's petition to remove Harley C. Douglass as co-trustee of the Harlan D. Douglass Trust is affirmed. Lanzce's motion to strike portions Harley's brief is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.                Fearing, J.

19